KENTUCKY BOARD OF TAX APPEALS
et al., Appellants,

v.

CITIZENS FIDELITY BANK AND
TRUST COMPANY, Executor of the Estate of Lois Don Clancy, Deceased, Appellee.

CITIZENS FIDELITY BANK AND
TRUST COMPANY, Executor of the Estate of Lois Don Clancy, Deceased, Cross-Appellant,

v.

KENTUCKY BOARD OF TAX APPEALS
et al., Cross-Appellees.

Court of Appeals of Kentucky.

June 20, 1975.

William P. Sturm, Legal Staff, Dept. of Revenue, William S. Riley, Asst. Atty. Gen., Dept. of Revenue, Frankfort, for appellants and cross-appellees.

Edwin G. Middleton, Middleton, Reutlinger & Baird, Louisville, for appellee and cross-appellant.

PALMORE, Justice.

This case involves the construction and constitutional validity, under the equal protection clause of the 14th Amendment, of KRS 140.040, which applies to powers of appointment.

The appellee and cross-appellant, Citizens Fidelity Bank and Trust Company (hereinafter called the executor), is executor of the will of Lois Don Clancy, who died in 1962 a resident of Kentucky. Mrs. Clancy was the life beneficiary with power to appoint the remainder under two trusts, one created by the will of Harriett M. Don, who died a resident of New York in 1921, and the other by the will of Julia H. Morrison, who died a resident of New York in 1926. The assets of these trusts were located in New York and the trusts were administered by a New York trustee. By her will Mrs. Clancy exercised the powers of appointment in favor of her daughter, whereupon the assets of the trusts were relinquished to the appointee.

The Kentucky Department of Revenue assessed inheritance taxes against the daughter on the basis that the transfers under the powers of appointment were taxable as having taken place at Mrs. Clancy's death, and that the assets thus transferred should be aggregated with the other property left by Mrs. Clancy out of her own separate estate to the daughter for the purpose of determining the exemption and rates applicable to this separate property that passed to the daughter apart from the operation of the powers of appointment.

Following an unsuccessful appeal to the Board of Tax Appeals the executor appealed to the Franklin Circuit Court.

The executor contended first that KRS 140.040 is constitutionally invalid, hence no inheritance tax is collectible by Kentucky on the property (hereinafter called the appointive property) that passed by virtue of the powers of appointment, and secondly, if it be mistaken in that respect, that the appointive property should be taxed separately from, and not aggregated with, the other property willed by the testatrix to her daughter. The trial court was not convinced by the constitutional argument but upheld the executor on the alternative point, whereupon the taxing authorities appealed and the executor cross-appealed to this court. Our conclusion is that the position of the taxing authorities was correct on both points.

Subsection (2) of KRS 140.040 provides that when a power of appointment "passes to the donee thereof at the death of the donor, under any instrument, and if the donor dies on or after April 24, 1936, the transfer shall be deemed to take place, for the purpose of taxation, at the time of the death of the donor and the assessment be made at that time against the life interest of the donee and the remainder against the corpus. The value of the property to which the power of appointment relates shall be determined as of the date of the death of the donor and shall be taxed at the rates and be subject to the exemptions in effect at the death of the donor. . . . It is further provided that the remainder interest passing under the donee's power of appointment . . . shall be added to and made a part of the distributable share of the donee's estate for the purpose of determining the exemption and rates applicable thereto."

Subsection (3) of KRS 140.040 provides that "in all cases other than that described in subsection (2) the transfer shall be deemed to take place, for the purpose of

taxation, at the time of the death of the donee. In such cases, the value of the property to which the power of appointment relates shall be determined as of the date of the death of the donee and shall be taxed at the rates and be subject to the exemptions in effect at the death of the donee."

The executor's constitutional argument centers on the proposition that the statute creates two classes of appointees who are similarly situated except for the date of the death of the donor at whose death the power passed to the donee, and that there is no reasonable basis for differentiation between those who take under powers created prior and subsequent to April 24, 1936.

To preview the following discussion, our response to this argument is (1) that the real classification effected by the statute depends on the taxability of the transfer by this state at the death of the donor, and (2) that April 24, 1936, is a reasonable basis for differentiation because that is the date on which transfers through appointment first became taxable in Kentucky at the death of the donor.

As it appears in its present form KRS 140.040 was last amended by Ch. 96, Acts of 1948. Its evolution prior to that time is set forth in *Allen's Ex'r* v. *Howard*, 304 Ky. 280, 200 S.W.2d 484 (1947),[1] but for the sake of convenience we shall again summarize it here.

Between 1906, when first enacted (Ch. 22, Acts of 1906), and 1924 the inheritance tax statutes did not include any special provision for powers of appointment. Contingent and conditional interests were then taxed "at the highest rate which upon the happening of any said contingencies or conditions would be possible," and the tax was "due and payable forthwith . . . out of the property transferred."[2] Carroll's

Ky.Stat., § 4281a–1a (1922). A prospective beneficiary could, however, defer payment by executing bond. Id., § 4281a–2.

What is now the main portion of KRS 140.040(1) was enacted by Ch. 111, Acts of 1924, and became § 4281a–1, subsection 3, Carroll's Ky.Stat. It provided in substance that whenever any person exercised a power (regardless of when or where created) the appointment was to be considered a taxable transfer in the same manner as if the appointive property had belonged to the donee in his own right, and that the same principle was to apply to the perfecting of a remainder interest through the donee's failure to cut it off by exercising his power.

Trouble arose with the passage of Ch. 8, Acts of the Third Extra Session, 1936, which became effective on April 24, 1936. Without otherwise changing the language of the section as it had been enacted in 1924, § 1(3) of the 1936 act simply added the following proviso (emphasis added):

"Provided that . . . the transfer shall be deemed to take place, for the purpose of taxation, at the time of the death of the donor and *the assessment be made at that time* against the life interest of the donee and the remainder against the corpus *and collection thereof shall be made*" from the executor of the donor's estate.

In short, as amended in 1936 the statute said that the testamentary exercise or non-exercise of a power of appointment should be deemed a transfer from and out of the estate of the donee of the power, but for tax purposes would be treated as taking place at the death of the donor and would be taxed at that time.

In retrospect at least, two inferences from the 1936 amendment seem obvious and unavoidable. One is that since the tax was to be assessed and collected at the

---

1.  That decision held that there was no taxable transfer at the death of a donor who had created a testamentary power of appointment by an inter vivos instrument.

2.  Under the present statute, KRS 140.110, the rate is calculated on the basis of "the most probable contingencies or conditions" named in the instrument.

donor's death the amendment could not apply if the donor's death had occurred before the amendment was enacted. The other is that since transfers by nonresident donors generally are not taxable by this state the amendment could not have been intended to apply to powers created by nonresident donors. Nonetheless, and despite the revenue department's protests to the contrary, the obvious presented no insurmountable obstacle to this court. It held in *Reeves v. Fidelity & Columbia Trust Co.*, 293 Ky. 544, 169 S.W.2d 621 (1943), that if the donor had died before the effective date of the 1936 amendment the tax should be collected at the time of the donee's death but at the rates that had been in force at the time of the donor's death, and in *Ream v. Dept. of Revenue*, 314 Ky. 539, 236 S.W.2d 462 (1957), it came to the same conclusion with respect to the 1946 exercise of a power created by the will of a donor who had died a resident of Connecticut in 1924. Under these decisions, if the transfer was not taxable by this state at the donor's death it was taxed at the donee's death but at its value and at the rates applicable as of the time of the donor's death.

Meanwhile, Ch. 204, Acts of 1942, added a further sentence providing that the appointive property shall be aggregated with and considered a part of the donee's estate for the sole purpose of determining the exemption and rates applicable to such portion of the estate as may have passed to the appointee aside from the exercise or nonexercise of the power. It is of interest to note that in the *Reeves* opinion it was observed that the 1942 act did give the statute the effect the revenue department had contended was inherent in the 1936 amendment, but there is no mention of that observation in the later *Ream* opinion.

The statute was revamped by Ch. 96, Acts of 1948, as follows:

(1) The old 1924 language was retained as KRS 140.040(1), followed by this sentence: "The time at which such transfer shall be deemed to take place, for the purpose of taxation, shall be governed by the provisions of subsections (2) to (4) of this section."

(2) The substance of the 1936 proviso as amended by the 1942 act was retained as KRS 140.040(2), except for its being made explicit that it applies only to powers of appointment taking effect at the death of a donor on or after April 24, 1936.

(3) A new subsection, KRS 140.040(3), provided that in all cases "other than that described in subsection (2)" the transfer shall be deemed to take place, for tax purposes, at the donee's death and that the property to which the power relates shall be taxed at its value, at the rates, and subject to the exemptions in effect at that time.

The remaining sections of KRS 140.040 [(4) and (5)] as revised in 1948 are not vital to our disposition of the case.

As we see this statute in perspective, neither the unimaginative draftsmanship of its various amendments nor the artificial and unnecessary result invented in *Reeves* and followed in *Ream* can obscure what appears to have been a clear and consistent legislative purpose since 1936, which is to tax transfers by appointment at the death of the donor if possible and at the death of the donee if not. We consider the *Reeves* opinion unsound, and with it *Ream*, its progeny. Both are overruled.

■ Most transfers of property rights take place all at once. Even the most insignificant fractional interest ordinarily passes instantaneously from one ownership to another. Powers of appointment present an exception, but because an exception would not have comported with the necessities out of which common-law principles had grown, the common law pretended that nothing passed until the power was exercised, and then the title passed from the donor. As a practical matter, however, we know that a power of appointment involves a two-stage transfer, which begins with the creation of

the power and ends with its exercise—or, in the instance of a default in exercise, begins with the creation of a power to shift the title and ends when the power dies unexercised. It is elementary, of course, that a state may tax the transfer at either stage.

Under the 1924 act the transfer was taxed exclusively at the second stage, which is more desirable from an administrative standpoint at least. If, however, the donee of a power is or becomes a nonresident of the state, or exercises the power inter vivos, the transfer escapes taxation unless it has been intercepted at the first stage. That was the hole the 1936 act meant to plug. But since donors who had created or might thereafter create powers outside the jurisdiction of the state could be reached only through resident donees, and since resident donees already were subject to that jurisdiction by virtue of the 1924 act, there was no reason or necessity for the 1936 amendment to reach out for such donors, *Reeves* and *Ream* to the contrary notwithstanding.

The executor would have us construe KRS 140.040(2) as applicable to all donors, resident or nonresident, whose deaths occur or have occurred on or after April 24, 1936 (as the 1936 act was construed in *Reeves*), and KRS 140.040(3) as applicable to all instances in which the donor died before that time. Proceeding on this premise, which is conceded to be the *sine qua non* of its constitutional argument, the executor contends that if the trusts involved in this case had been created on or after April 24, 1936, there would be no tax on the transfer effected by the donee's exercise of her testamentary powers.

If KRS 140.040(2) were so construed, then of course a transfer begun by a nonresident donor on or after April 24, 1936, and later completed by a resident donee would entirely avoid taxation by this state. The contention that it should be so construed rests on the absence of the word "resident" to restrict the meaning of "donor." We do not accede. As heretofore stated with reference to the 1936 amendment, which is assimilated by KRS 140.040(2), we cannot construe a statute that calls for the assessment and collection of a tax at the time of a donor's death as having been intended to apply where the state has no power to levy such a tax. The very argument illustrates the absurdity of such a construction. In that context, physical absence of the restrictive adjective "resident" does not defeat its inclusion by necessary implication.

Our construction of KRS 140.040(2) and (3) is as follows:

KRS 140.040(2) applies to all transfers taxable by this state at the death of the donor. We say "taxable" for the simple reason that obviously it cannot apply to a transfer which, for whatever reason, is *not* taxable by this state. Two circumstances in which the testamentary creation of a power is not taxable by this state come immediately to mind: either the donor died before April 24, 1936, when there was no statute affecting that stage of the transfer, or he was not a resident of this state at the time of his death (whether before or after April 24, 1936), for which reason the transfer had not thus far come within its jurisdiction to tax.

KRS 140.040(3) applies to all other taxable transfers completed by the exercise or nonexercise of a power of appointment, which includes all transfers that were not subject to this state's inheritance tax laws when they were commenced but are subject to those laws by reason of the donee's residence in this state at the time he exercises the power. In this class of transfers at the donee's death are all powers created by nonresidents, all powers created prior to April 24, 1936, and all powers created by inter vivos transactions (or, more precisely, powers that pass to the donee other than at the donor's death).

Since we do not adopt the construction advocated by the executor it becomes unnecessary to consider the applicability and effect of *Binney* v. *Long*, 299 U.S. 280, 57

S.Ct. 206, 81 L.Ed. 239 (1936),[3] except insofar as it may relate to the alternative contention that an aggregation of the appointive property with other property left to the appointee out of the donee's separate estate is discriminatory. Before dealing with that contention, perhaps it will be helpful for us to examine briefly the difference in practical effect between KRS 140.040(2) and KRS 140.040(3).

Under KRS 140.040(2) the taxes are assessed and collected following the donor's death. They are levied against both the life estate of the donee and the remainder interest[4] of the prospective appointee, according to property values and tax rates in effect at that time. There is no provision for adjustment of these taxes following the donee's death. If the donee is or becomes a nonresident and the distributable shares of his estate at the time of his death are not subject to taxation by this state, that is the end of it. The tax on the appointive share has been paid. If, however, the donee's estate *is* subject to this state's inheritance taxes, and if the donee leaves to the appointee[5] other property, in addition to that which passes by reason of the exercise (or nonexercise) of the power of appointment, then for the sole purpose of determining the exemption and rates applicable to that additional property the value of the appointive remainder interest as of the date of the donee's death is aggregated with it.

Under KRS 140.040(3) there is no complication. No tax was paid or payable at the donor's death. The appointive property is simply treated as a part of the donee's general estate. The disadvantage to the taxpayer, in comparison with what his situation would have been under KRS 140.040(2), is that both the appointive property and whatever other property he has received from the donor's estate are exposed to higher rates under the progressive schedules set forth in KRS 140.170, whereas under KRS 140.040(2) that portion of the estate represented by the appointive property, though used for the purpose of pushing the nonappointive share into higher rate brackets, has already been taxed and is not exposed to any higher rate than that which was separately applied to it at the time of the donor's death. Nor, under KRS 140.040(2), would the tax on the appointive share itself be affected by an enhancement (or decrease) in its value during the interim between the donor's and donee's deaths.

*Binney* v. *Long*, 299 U.S. 280, 57 S.Ct. 206, 81 L.Ed. 239 (1936), involved one testamentary and two inter vivos trusts. Only the testamentary trust, created in 1891, presented a problem comparable enough with this case to justify discussion. All of the relevant events occurred in Massachusetts. The life beneficiary died intestate in 1931, having failed to exercise a power to appoint the remainder interest among her children.

Prior to 1907 Massachusetts death taxes "applied only to collateral inheritance and excluded devolution to lineal descendants. In 1907 a law was enacted taxing testamentary devolution . . . to lineal descendants; this made no mention of powers of appointment; the tax was graduated according to amounts and relationships, but there was no requirement of aggregation of various interests passing and accruing to a single beneficiary from or on account of the death of a decedent to ascertain the rate of tax. Such a provision for uniting interests was enacted in 1924, and incorporated with the first section of the act of 1907 as amended into a single section.

"The act of 1907 and its amendments were prospective in operation and exempted

---

**3.** See, however, the lucid opinions in *In re Newton's Estate*, 35 Cal.App.2d 830, 221 P.2d 952 and 956 (1950).

**4.** We are not here concerned with powers that may be exercised inter vivos.

**5.** In this context we use the word "appointee" as including a beneficiary who takes, or whose interest is freed of the conditional limitation, by reason of a default in exercise of the power.

estates of those who had died prior to its effective date. . . .

"In 1909 provision was made for a succession tax upon the occasion of the exercise, or nonexercise of, powers of appointment. . . . The effective date of this provision was declared to be September 1, 1907, which was the effective date of the 1907 act. . . ." 299 U.S. at p. 284, 57 S.Ct. at p. 208.

The 1909 act provided that the exercise (or nonexercise) of any power of appointment created prior to September 1, 1907, should be treated as a transfer of the donee's own property. Under the 1907 law no tax had been payable on the appointive remainder interest until it came into possession, at which time it was taxed as a transfer from the donor rather than the donee. 299 U.S. at p. 292, 57 S.Ct. 206. The effect, therefore, of switching into the donee's estate property which theretofore had been separately taxable as a part of the donor's estate was to throw it into a different and higher tax classification. A divided court, with Justices Cardozo and Brandeis dissenting, held that in placing "those who succeeded to remainder interests created prior to September 1, 1907, into a taxable class while . . . taxing on a different basis and at a different rate remaindermen taking under instruments effective subsequent to September 1, 1907," the 1909 and 1924 acts were arbitrary. 299 U.S. at pp. 294, 295, 57 S.Ct. at p. 212.

One significantly distinguishing feature of the *Binney* problem was that unlike our 1936 act, the 1907 Massachusetts law made no provision for collection of a tax on the appointive property at the time of the donor's death. See 299 U.S. at pp. 293, 294, 57 S.Ct. 206. Thus if two different appointees

came into simultaneous possession of equal assets through the exercise of separate powers of appointment, one created before 1907 and the other after 1907,[6] both paid the inheritance tax at that time, one as if he had taken from the donor and the other as if he had taken from the donee. Our law is essentially different in that both do not pay at the same time, and each is taxed on the basis of circumstances existing at the time the tax is levied. By undertaking to draw it (299 U.S. at pp. 293, 294, 57 S.Ct. 206), *Binney* leaves the inference that this distinction had dispositive importance.

■ Quite aside from the factual distinction, there is reason to doubt that *Binney* would be followed by the United States Supreme Court today. Even the court as then constituted did not agree in what it meant. Thus, for example, we find Justice Roberts, the author of the opinion, dissenting in *Whitney* v. *State Tax Comm.*, 309 U.S. 530, 542, 60 S.Ct. 635, 84 L.Ed. 909 (1939), on the ground that the case was "indistinguishable in principle" from *Binney*.[7] In any event, we are satisfied that because April 24, 1936, was the date on which this state began to tax the transfer of appointive property at the time of the donor's death, it provides a reasonable and therefore constitutionally sound basis for the classification effected under KRS 140.-040 as we construe it.

■ We realize, of course, that the law *could* more nearly achieve complete equality of treatment. That would be so, for example, if the appointee under a power created on or after April 24, 1936, were taxed exactly the same as if the power had been created before April 24, 1936, subject to a credit in the amount theretofore paid at the donor's death, with interest from

---

6. For example, donor A dies in 1905 leaving a half interest in Blackacre to X in fee and the other half interest to Y for life with power to appoint the remainder in fee. X dies in 1910 leaving his half interest to Y for life with power to appoint the remainder in fee. Y dies in 1930, exercising one power in favor of B and the other in favor of C.

7. Compare also *Madden* v. *Kentucky*, 309 U.S. 83, 93, 60 S.Ct. 406, 84 L.Ed. 590 (1939), as evidence of the difference in viewpoint between Justice Roberts and the majority of the court with respect to the equal protection and privileges and immunity clauses of the 14th Amendment.

date of payment. Conversely, the appointee of property not taxed at the donor's death might be taxed retroactively, *a la Reeves* and *Ream*, with interest representing the use value of the tax money during interim, and then be given the same treatment as under KRS 140.040(2). However, the constitutionality of a classification does not depend upon whether it is necessary, or could have been avoided, but whether it is rationally related to a legitimate objective. Cf. *Chapman* v. *Eastern Coal Corporation*, Ky., 519 S.W.2d 390, 393 (1975). That test is amply satisfied by KRS 140.040.

■ Two other points bear mention. In a similar case some time ago, which did not reach the courts, the revenue department accepted the taxpayer's viewpoint and taxed separately property that had been appointed under a power created before 1936. Now, the executor argues, since a contemporaneous construction thereby was placed on an ambiguous statute it should continue to be followed. We mention the argument only to lay it to rest. In the first place, we think that most of the ambiguity is not intrinsic to the statute but has generated from the outside. Except for *Reeves* and *Ream* it very well may have led a

peaceful existence. Secondly, we are no more disposed to hold that an administrative body can change a law by mistake than to hold that it can do so on purpose.

■ Finally, it is argued that by the express terms of KRS 140.040(2), "or from the language thereof it may be reasonably implied," when the value of the appointive property is aggregated with other property left to the appointee out of the donee's separate estate (for the purpose, that is, of determining the exemption and rates applicable to the separate property), "*the value of the donee's life interest outstanding at the death of the donee*" (emphasis added) is to be deducted from the value of the appointive property, and therefore the same deduction should be made under KRS 140.-040(3). The answer is that there is no such animal as a value of a life interest remaining at the end of the life on which it depends, and there is no authority for deducting this fictional creature under either subsection of the statute.

The judgment is reversed on the appeal and affirmed on the cross-appeal with directions that it be modified accordingly.

All concur.