**BETH–ELKHORN CORPORATION, Appellant,**

v.

**John McDowell ROSS, Commissioner of Revenue, etc., et al., Appellees.**

**KENTUCKY CARBON CORPORATION, etc., Appellant,**

v.

**John McDowell ROSS, Commissioner of Revenue, etc., et al., Appellees.**

Supreme Court of Kentucky.

June 10, 1977.

C. Gibson Downing, Bennett Clark, Stoll, Keenon & Park, Lexington, for appellant Beth-Elkhorn Corp.

Armer H. Mahan, Davis & Mahan, Louisville, for appellant Kentucky Carbon Corp.

William S. Riley, Asst. Atty. Gen., and Thomas A. Duke, Attorney, Legal Staff, Dept. of Revenue, Ben B. Fowler, Stites, McElwain & Fowler, Frankfort, for appellees.

PALMORE, Justice.

This is a class action in behalf of self-insured employers under KRS 342.340 against the Commissioner of Revenue of Kentucky challenging the method used by the Commissioner to establish the minimum "adjusted cost" as defined by KRS 342.122(1). All insurance companies carrying workmen's compensation insurance in Kentucky during the period in question have been joined as class defendants. The self-insured employers appeal from a judgment sustaining the position of the Commissioner.

Every employer subject to the Workmen's Compensation Law (KRS Ch. 342) must either carry workmen's compensation insurance or qualify as a self-insurer. KRS 342.340(1). All are required to pay a 2% maintenance-fund tax and a .75% special claim-fund tax. In the instance of commercially-insured employers these assessments are based on net premiums and are collected and paid in by the insurance carrier. KRS 342.445, 342.122(2). In the instance of self-insured employers they are based on the employer's "adjusted cost" and are paid directly by the employer. KRS 342.475, 342.122(1). Annual returns and reports providing the necessary figures and computations are required to be filed with the Department of Revenue by March 1. KRS 342.450, 342.475.

The term "adjusted cost" is defined in KRS 342.122(1) as follows:

" 'Adjusted cost' as used in this section and in KRS 342.475 means all compensation, hospital and medical benefits paid thereunder, plus an additional factor of twelve per cent (12%) of such total payments, to cover the administrative cost of

the employer. However in no event shall 'adjusted cost' be less than fifty per cent (50%) of the basic insurance premium computed by applying *current manual rates* for workmen's compensation insurance to the payroll of every employer carrying his own risk and for this purpose each such employer shall annually furnish payroll data to the department of revenue." (Emphasis added.)

■ The argument in this case is confined primarily to what is meant by "current" manual rates in the foregoing context. The self-insured employers contend it means the rates currently in effect during the calendar year covered by the KRS 342.-475 report of adjusted costs. The Commissioner contends that it refers to the rates in effect contemporaneously with the report, which for the sake of convenience he has designated as January 1 of the year in which the report is due by March 1. This designation has prevailed at least since 1966, when the function of administering and collecting the taxes was transferred from the Department of Labor to the Department of Revenue.

The controversy was precipitated by the occurrence of a substantial increase in manual rates during January of 1973, which for purposes of this discussion may be treated as having taken place on January 1, 1973.

Relying on the commonly-accepted meaning of the word "current," cf. KRS 446.-080(4), as well as the doctrine of contemporaneous construction, the trial court construed it in accordance with the contention of the Commissioner.

We could theorize at length on rules of construction and various ways of gaining insight into the intended force of words. What strikes one person as a clue may not so appear to another. In the end, however, within our judicial system the decision must be rested on what the words in question mean to this court, and the simple fact is that we think the term "current manual

rates" refers to the rates current during the period of time covered by the report and should never have been construed by the Department of Revenue as meaning anything else.

Manual rates for insurance are put in effect through filings with the Commissioner of Insurance. KRS 304.13–050. The actions that culminated in the January 1, 1973, rates began with a filing by the National Council on Compensation Insurance in November of 1972. Following a hearing held on December 19, 1972, the Commissioner disapproved the filing by an order entered on January 5, 1973, in which the National Council was requested to submit a revised filing "with the understanding that such rates, if approved by the Department, shall be approved to be effective January 1, 1973." The revised filing so requested was filed with the Commissioner of Insurance on January 26, 1973, "to become effective 12:01 A. M. January 1, 1973." On January 29, 1973, it was stamped "Deemed in Effect . . . Department of Insurance Commonwealth of Kentucky."

We recite the foregoing information to illustrate a point.[1] The word "current" as used in KRS 342.122(1) is subject to only four possible meanings, (1) during the payroll period covered by the employer's report, which was the calendar year 1972, (2) the date on which the report was due, which was March 1, 1973, (3) the date on which the employer actually filed the report, and (4) some other date prescribed by the Commissioner of Revenue. For obvious reasons, one of which is that no one champions it, No. (3) may be eliminated. If the legislature really meant for the rates current at the time of reporting to be used, No. (2) would be the more logical answer, but of course no employer, when preparing its report for filing on or before March 1, would know what the rates would be on that day, and thus would be unable to report its "adjusted cost" of operating as required by

---

1. It may be seen, for example, that while contending in effect that "current" means "here and now," and not last year, the Commissioner at the same time has no difficulty in accepting the fiction that a figure not in existence on January 1, 1973, could be created retroactively as current on that date by an order entered four weeks later.

KRS 342.475. To avoid this unlikely result the appellees resort to the semantic dodge of distinguishing between "adjusted cost" and the minimum figure arrived at by multiplying 50% of current manual rates times the payroll. In straight English, we think this dog will not hunt. KRS 342.122(1) plainly says that "in no event shall 'adjusted cost' *be* less than" the specified minimum (emphasis added), which, to this court at least, connotes that if the "adjusted cost" computed according to experience (plus 12%) is less than the minimum, then the minimum *is* the "adjusted cost."[2] "Fictitious" as the resulting figure may be, so is the 12% component of the figure to which the appellees would limit the definition of "adjusted cost." The word "adjusted" itself connotes a fiction. In any event, they do not contend that the statute mandates March 1, the due date for filing the payroll reports, as the time to be used in determining "current manual rates," and we do not think so either.

2. It would appear that the Department of Revenue itself regarded the greater of the two figures as "adjusted cost" until it sought to draw the distinction in this case. The bottom line of its official reporting form (54A 114), on which the greater figure is to be entered, begins with the words, "This is your Adjusted Cost."

We are even less inclined to believe that the legislature intended that someone "select" a date for that determination, however convenient such an approach might seem. If that body had intended the word "current" to mean any time or period other than that covered by the required report, it is our opinion that it would have said so.

With reference to "contemporaneous construction," what was said in *Kentucky Bd. of Tax App. v. Citizens Fid. B. & T. Co.,* Ky., 525 S.W.2d 68, 75 (1975), is equally appropriate here: If there is ambiguity, it is not intrinsic to the statute but has been created by the Department of Revenue, and "we are no more disposed to hold that an administrative body can change a law by mistake than to hold that it can do so on purpose."

The cause is reversed with directions that a new judgment be entered consistent with this opinion.

All concur.