REVENUE CABINET, Commonwealth of Kentucky, Appellants,

v.

LAZARUS, INC., et al., Appellees.

No. 1999–SC–1070–DG.

Supreme Court of Kentucky.

May 24, 2001.

Debra Hays Eucker, Michael D. Kalinyak, Frankfort, for Appellant.

Thomas A. Brown, Mark F. Sommer, Bradley D. Hamblin, Greenbaum, Doll & McDonald, Louisville, Frank G. Julian, Cincinnati, OH, Robert G. Layton, Kentucky Board of Tax Appeals, Frankfort, Kimberly K. Greene, Dinsmore & Shohl, LLP, Louisville, for Appellees.

GRAVES, Justice.

This appeal presents two questions concerning Kentucky use tax liability. When material is created, designed and printed outside of Kentucky, is a Kentucky retailer liable for state use tax on: (1) pre-printed newspaper supplements shipped directly from the out-of-state printer to Kentucky, and (2) catalogs mailed directly from the out-of-state printer to potential customers in Kentucky? We hold that both the newspaper inserts and the catalogs are subject to the use tax imposed by KRS 139.310, because they are tangible property stored, used, and consumed in Kentucky in the process of advertising goods.

In May 1994, the Kentucky Revenue Cabinet (the "Cabinet") began an audit of the Kentucky operations of Lazarus, Inc. ("Lazarus"), a company which owns and operates retail stores selling general consumer merchandise at various locations in Kentucky, from July 1, 1990, to May 31, 1994. The audit resulted in use tax assessments on Lazarus' distribution of preprinted newspaper advertising inserts and direct mail advertising catalogs. Out-of-state printers produced the inserts and catalogs per Lazarus' instructions.

During the years of the audit, Lazarus undisputedly distributed the pre-printed advertising inserts through several newspapers in Kentucky, and distributed the catalogs through the U.S. mail on a weekly basis. Lazarus designs or directs the design of the newspaper advertising inserts and then sends proofs to a printer outside Kentucky for production. The printer produces the inserts on paper Lazarus supplies and then ships them to Kentucky newspapers in accordance with Lazarus'

instructions. The newspapers generally receive the inserts ten to fourteen days before their distribution date. Lazarus dictates the date and number of inserts that each newspaper will distribute. Lazarus also designs the catalogs, which are printed out of state as well. Lazarus then has the printer either directly mail the catalogs to the Kentucky households on Lazarus' proprietary customer list, using address labels it supplies, or package the catalogs with material supplied by other advertisers and mail the packages into markets Lazarus chooses.

■■■■ The courts below relied on the doctrine of contemporaneous construction to prohibit the Cabinet from taxing the newspaper inserts. In *GTE v. Revenue Cabinet*, Ky., 889 S.W.2d 788, 792 (1994), this Court explained the doctrine of contemporaneous construction as follows:

> This Court has held that interpretation of a statute made by an administrative agency, once made and applied over a long period of time, cannot be unilaterally revoked by the agency. *See Hagan v. Farris*, Ky., 807 S.W.2d 488 (1991); *Grantz v. Grauman*, Ky., 302 S.W.2d 364 (1957); *Paducah Marine Ways v. Revenue Cabinet*, Ky.App., 730 S.W.2d 956 (1987).

> Under the doctrine of contemporaneous construction, the use of a combined reporting method by an unitary business is provided for in KRS 141.120. The doctrine of contemporaneous construction means that where an administrative agency has the responsibility of interpreting a statute that is in some manner ambiguous, the agency is restricted to any long-standing construction of the provisions of the statute it has made previously. "Practical construction of an ambiguous law by administrative officers continued without interruption for a

very long period is entitled to controlling weight." *Grantz, supra.*

The doctrine of contemporaneous construction precludes the use of internal policy changes by administrators to reverse and overturn long-standing interpretations that have, over time, become part and parcel of the fabric of the law being administered.

The lower courts ruled that because the Cabinet's auditors failed to assess use tax on newspaper inserts in a total of 18 audits against six retailers over a 30–year period, the Cabinet had effectively established a 30–year audit policy against taxing inserts. Therefore, based on the doctrine of contemporaneous construction, the Cabinet could not now tax the inserts. On appeal, the Cabinet asserts that the evidence does not support this conclusion, and that Lazarus used tangible personal property that subjected it to taxation under KRS 139.310.

With regard to the direct mail catalog assessments, the courts below relied upon two earlier Kentucky Board of Tax Appeals cases that held that catalogs mailed by the out-of-state taxpayers to recipients in Kentucky did not trigger the KRS 139.310 use tax provisions. *See Montgomery Ward & Co. v. Department of Revenue*, KBTA File No. K67–R–9 and *J.C. Penny Co. v. Department of Revenue*, KBTA File No. K67–R–34. The Cabinet appeals the ruling on the catalog assessments, arguing that the United States Supreme Court's decision in *D.H. Holmes Company, Ltd. v. McNamara*, 486 U.S. 24, 108 S.Ct. 1619, 100 L.Ed.2d 21 (1988), superseded the KBTA cases. Further, the Cabinet argues that the use tax statute necessarily reaches the distribution of tangible personal property such as these catalogs.

## I. NEWSPAPER INSERTS

■■■ KRS 139.190 imposes a use tax "on the storage, use, or other consumption in

this state of tangible personal property purchased on and after July 1, 1990, for storage, use, or other consumption in this state at the rate of six percent (6%) of the sales price of the property." "Use", as defined in KRS 139.190, includes "the exercise of any right or power over tangible personal property incident to the ownership of that property, or by any transaction in which possession is given, except that it does not include the sale of that property in the regular course of business." The sales and use tax laws are integrated elements of a taxing program that is designed to reach all transactions in which tangible property is sold inside or outside of Kentucky for storage, use, or consumption within Kentucky. *Genex/London v. Kentucky Bd. of Tax Appeals*, Ky., 622 S.W.2d 499, 506 (1981). The use tax is frequently called a backstop to the sales tax because it ensures that transactions in other states are treated just as if they had taken place in this state and been subjected to the sales tax. *Commonwealth v. Lee's Ford Dock, Inc.*, Ky., 551 S.W.2d 236 (1977).

The record establishes that while Lazarus did not have actual possession of the newspaper advertising inserts, it maintained the right of complete control over the handling and distribution of the inserts after their delivery to Kentucky newspapers for distribution. In fact, Lazarus stipulated that it stores the newspaper inserts in Kentucky. The inserts belong to Lazarus up until the time they are distributed to newspaper subscribers free of charge. Once the newspaper subscriber, a potential customer, has possession, Lazarus has made a taxable use of the insert. Pursuant to the plain and unambiguous language of KRS 139.310 and KRS 139.190, the use tax applies to "the exercise of any right or power incident to the ownership of property or any transaction in which possession is given ...." Because Lazarus paid no

sales tax to the state where the newspaper inserts were created and manufactured, Lazarus is required to pay Kentucky's use tax because the inserts were stored, used and consumed in Kentucky. The General Assembly employed broad language so that the use tax would reach all forms of tangible property used in the state. Kentucky's use tax is clear and unambiguous.

 The Cabinet's contemporaneous construction of KRS 139.310 was inferred through its failure to make use tax adjustments against six retailers over a 30–year period. However, contemporaneous construction cannot be founded upon an administrative agency's failure to correctly apply the law. *Delta Air Lines, Inc. v. Revenue Cabinet*, Ky., 689 S.W.2d 14, 19–20 (1985). The doctrine of contemporaneous construction is a judicial tool for statutory construction. This Court stated in *Commonwealth ex rel. Huntsman v. Kentucky Distilleries & Warehouse Co.*, 143 Ky. 314, 136 S.W. 1032, 1039–40 (1911), "[M]ere nonaction upon the part of the officers of the state is not to be treated as contemporaneous construction." Nor can the Cabinet change the law through mistake.

The failure of a public officer to correctly administer the law does not prevent a more diligent and efficient public administrator to bring into the revenue proper subjects of taxation. An erroneous interpretation of the law will not be perpetuated. (citations omitted)

*Delta Air Lines, supra.* In *Kentucky Bd. of Tax App. v. Citizens Fid. B. & T. Co.*, Ky., 525 S.W.2d 68 (1975), this Court specifically rejected the notion that contemporaneous construction can be based upon an administrative agency's mistakes. "[W]e are no more disposed to hold that an administrative body can change the law by mistake than to hold that it can do so on

purpose." *Id.* at 75; *see also Beth–Elkhorn Corp. v. Ross,* Ky., 552 S.W.2d 656, 659 (1977).

In *Delta Air Lines, supra,* this Court was asked to apply the doctrine of contemporaneous construction against the Cabinet. Following the creation of the sales tax in 1960, the Cabinet and the airline industry jointly developed a formula to calculate the amount of sales tax to be paid by the airlines. Delta and the other members of the airline industry used this formula to calculate the amount of their sales tax liability for seventeen years. Then, in 1979, the Cabinet decided that the use of the formula was improper, and informed the airlines that in the future, they would be expected to pay sales tax on all food and fuel purchases made in Kentucky, as required by the sales tax statute. On appeal this Court refused to apply the doctrine of contemporaneous construction, and stated the following as its reason:

> The arguments of Delta extend the doctrine of contemporaneous construction beyond any ascertainable precedent. The primary statute is not ambiguous. KRS 139.200. There is no basis for application of the doctrine. An unambiguous statute is to be applied without resort to any outside aids. [citations omitted]. The Kentucky statute is imposed on retail sales and all retailers. There is nothing in the law which indicates that a retailer is relieved from collecting the tax from a purchaser because the purchaser will thereafter take the goods out of the state. There is no ambiguity requiring the use of extrinsic aids to construe the statute.

*Id.* at 19.

For decades the Cabinet collected use tax from other taxpayers for newspaper inserts. However, the Cabinet failed to assess newspaper inserts in 18 audits against six retailers over a 30–year period. The record only demonstrates that the Cabinet's auditors failed to spot the inserts against these six retailers. Such does not warrant the application of the contemporaneous construction doctrine.

## II. CATALOGS

 Catalogs and newspaper inserts are similar in that both are used for the purpose of advertising and both are distributed to Kentucky residents in accordance with Lazarus' instructions. The main difference between the two is the manner in which they are distributed. Lazarus' newspaper inserts are distributed through Kentucky newspapers. Catalogs, on the other hand, are distributed through the U.S. mail. The out-of-state printers that print Lazarus' catalogs mail the catalogs using address labels that are provided by Lazarus. Lazarus prepares the address labels from its own proprietary customer lists. Considering that newspaper inserts and catalogs are virtually the same thing, apart from their means of distribution, there is no logical basis to distinguish the two.

Lazarus used two approaches in its Kentucky direct-mail advertising: advertising catalogs and "marriage mail," an advertising method that was performed under a contract between Lazarus and another non-Kentucky company, ADVO. ADVO delivered Lazarus advertising materials— again, materials which were conceived, designed, printed, and manufactured outside of Kentucky—to the United States Postal Service at a point outside of the Commonwealth, from which they were mailed directly to Kentucky customers. The only distinction with "marriage mail" is that in the same mailing package, ADVO also included other companies' advertising material.

Lazarus created, designed, and authorized the catalogs' printing outside of Ken-

tucky. The printers, not Lazarus, mailed them outside of Kentucky directly to potential Lazarus customers in Kentucky. While the undisputed record confirms that never did Lazarus, any of its agents (other than the United States Postal Service), or its employees touch or control the catalogs after they were mailed, Lazarus benefited from sales of items advertised in the catalog. There can be no dispute that Lazarus used the catalogs in Kentucky in the same manner that it used the newspaper inserts. Other than the means of distribution, there is no meaningful distinction in Lazarus' use of newspaper inserts and catalogs.

 Prior to the instant case, the Cabinet did not tax catalogs, because such taxation was interpreted as being a burden on interstate commerce. The decision in *D.H. Holmes, supra,* found taxing catalogs was permissible because it was a nondiscriminatory tax on interstate commerce. In *D.H. Holmes, supra,* the U.S. Supreme Court held that taxing catalogs mailed into the state was not an unconstitutional burden on interstate commerce, and that states may require interstate commerce to pay its fair share of taxes. Thereafter, in 1991, the Cabinet issued an internal, non-officially promulgated Technical Assistance Ruling ("TAR"), subjecting catalogs like the ones in issue here to use tax if delivered under such circumstances. Thereafter, Cabinet auditors began assessing use tax.

The United States Supreme Court decision in *D.H. Holmes, supra,* is a Commerce Clause case which holds that states' taxes are not an impermissible burden on interstate commerce. In *D.H. Holmes,* the U.S. Supreme Court dismissed the idea that a retailer loses control over catalogs when it places them in the U.S. mail because it "verges on the nonsensical." 486 U.S. at 31, 108 S.Ct. 1619. The U.S. Supreme Court's analysis pertaining to a taxpayer's control over property that is mailed into the taxing state through the U.S. mail applies in Kentucky. By holding that catalogs are *not* subject to use tax, the Court of Appeals has adopted a minority position. The solid majority of states that have ruled on this issue have followed *D.H. Holmes* and ruled that use tax should apply to catalogs that are mailed into the taxing state. We believe that is the more reasonable and fair application and interpretation of the law.

Under these facts, we conclude that both Lazarus' newspaper inserts and catalogs are subject to use tax. Accordingly, the decision of the Court of Appeals is reversed.

All concur.