RENDERED:  OCTOBER 11, 2024; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0649-MR


COMMISSIONER OF THE DEPARTMENT
OF WORKPLACE STANDARDS,
EDUCATION AND LABOR CABINET                          APPELLANT


|   | APPEAL FROM FRANKLIN CIRCUIT COURT |
|---|---|
| v. | HONORABLE PHILLIP J. SHEPHERD, JUDGE |
|   | ACTION NO. 22-CI-00155 |


KALKREUTH ROOFING AND SHEET
METAL, INC.; AND KENTUCKY OCCUPATIONAL
SAFETY AND HEALTH REVIEW
COMMISSION                                           APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ECKERLE, A. JONES, AND TAYLOR, JUDGES.

ECKERLE, JUDGE:  The Franklin Circuit Court affirmed a Final Decision and

Order of Appellee, the Kentucky Occupational Safety and Health Review

Commission ("the Commission"), dismissing a citation and penalty against

Appellee, Kalkreuth Roofing and Sheet Metal, Inc. ("Kalkreuth"). Appellant, the Commissioner of the Department of Workplace Standards, Education, and Labor Cabinet ("the Cabinet"), had issued the citation and recommended a penalty. It now seeks review of the dismissal and urges reinstatement of its charges.

The underlying citation alleged that Kalkreuth violated 29 Code of Federal Regulation ("C.F.R.") § 1926.501(b)(10) when it allowed its employees to work within a warning line system on a flat or low-sloped roof without any secondary fall protection. However, the Commission and the Circuit Court interpreted the regulation as requiring secondary protection only if the work was being performed outside the warning line requiring dismissal of the citation. The Cabinet asks us to reverse the Circuit Court contending the regulation requires the use of secondary fall protection whenever a warning line system is employed regardless of where the work is being performed in relation to the warning line.

We conclude that the regulation and definition can be read together congruently, giving meaning to each, as required in statutory interpretation. This reading supports the interpretation offered by the Commission, Kalkreuth, the national trade organization, the underlying citation, and the practice that has been in place in the industry for many years. The Cabinet's recent conclusion, finding an ambiguity in the definition section of the regulation, unnecessarily strains the principles controlling the review and legal interpretations of the terms used in

regulations. It also unilaterally attempts to overturn long-standing and well-established practices without any showing that those practices have caused any harm or danger. Hence, we affirm the Circuit Court's Order upholding the Commission's decision to dismiss the Cabinet's citation against Kalkreuth.

## I. FACTUAL AND PROCEDURAL HISTORY

In 2018, Kalkreuth was performing roofing work on the Kentucky International Convention Center in Louisville, Jefferson County. During a routine investigation, the Cabinet noticed a Kalkreuth employee working on a flat or low-sloped, large roof *inside* a "warning line system" – an area marked by a warning barrier over six feet from the roof's edge. The language used in the definition of the terms used throughout the roofing industry and the regulations governing it are central to the issues before us. Undisputedly, all employees were working within the boundary of the warning line, and they used this demarcation line as the sole method of fall protection without any supplementation.

On November 28, 2018, the Cabinet issued a citation to Kalkreuth for one violation of 29 C.F.R. § 1926.501(b)(10), for failing to use a secondary fall-protection system. This citation carried a $2,000.00 penalty. Kalkreuth contested the citation, and the Cabinet filed a Complaint with the Commission. The Cabinet took the position, apparently for the first time, that the regulation required Kalkreuth's employees to use a supplemental fall-protection measure when

working within a warning line system on a low-slope or flat roof. Kalkreuth countered that a July 23, 1996, advisory letter ("the Ellis letter"),[1] and several advisory letters issued thereafter, interpreted the regulation differently and required additional safety measures only when workers went beyond the warning line system.

On September 13, 2021, the Commission's Hearing Officer (the "Officer") issued Findings of Fact, Conclusions of Law, and a Recommended Order upholding the Cabinet's citation. The Officer concluded that the language of the regulation and definition required Kalkreuth's employees to use supplemental safety measures in addition to the warning line system, whether within or outside of it, when working on a low-sloping or flat roof. However, the Officer also found that Kalkreuth had relied in good faith on the Ellis letter. Thus, the Officer found a violation, but recommended that no penalty be imposed.

Both Kalkreuth and the Cabinet submitted countervailing petitions seeking review. On February 2, 2022, the Commission issued a final Decision and Order dismissing both the citation and the civil penalty. The Commission concluded that the Cabinet failed to meet its burden of proving that Kalkreuth

---

[1] The Ellis letter was written by Russell B. Swanson, from the Directorate of Construction-Occupational Safety and Health Administration ("OSHA") – Office of Construction Standards and Compliance Assistance, in response to an inquiry from Dr. J. Nigel Ellis of Dynamic Scientific Controls regarding several interpretations of OSHA's standards regarding fall protection.

-4-

violated the standard set forth in the regulation. The Commission further concluded that the Cabinet failed to prove that Kalkreuth's actions exposed its employees to a fall hazard.

The Cabinet then appealed the Commission's Decision and Order to the Franklin Circuit Court under Kentucky Revised Statutes ("KRS") 13B.140 and 338.091. In an Opinion and Order issued on May 8, 2023, the Circuit Court affirmed the Commission. The Circuit Court concluded that the regulation required supplemental fall protection in addition to the warning line system only when workers went beyond that line. The Cabinet now appeals to this Court. Additional facts will be set forth below as necessary.

## II. STANDARD OF REVIEW

As an initial matter, we note that there has been a recent change in law on an issue that has tangential impact on this case. Kentucky has generally adhered to the doctrine of "*Chevron* deference," first enunciated by the United States Supreme Court in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984). Under this doctrine, courts may defer to an agency's interpretation of an ambiguous statute or regulation if it "is based on a permissible construction of the statute." *Id.* at 843, 104 S. Ct. at 8782. But following briefing in this case, the United States Supreme Court abrogated the *Chevron* doctrine in *Loper Bright Enterprises v. Raimondo*,

-5-

144 S. Ct. 2244, 2254, 219 L. Ed. 2d 834 (U.S. Jun. 28, 2024).[2] The Supreme Court reinforced the principle that it is the function of the courts, not the agencies whose actions the courts review, to decide all relevant questions of law and interpret statutory provisions. *Id.* at 2266. Specifically, "Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority. . . ." *Id.* at 2273.

Regardless of the recent opinion, *Chevron* deference or the rescindment thereof has no real impact here. First, the doctrine would not apply to the Cabinet's decision. Among other things, the Commission has the express authority to "hear and rule on appeals from citations, notifications, and variances issued under" KRS Chapter 338. KRS 338.071. Thus, the Commission, not the Cabinet, is designated as the primary arbiter. *Kentucky Lab. Cabinet v. Graham*, 43 S.W.3d 247, 252 (Ky. 2001), *abrogated on other grounds by Hoskins v. Maricle*, 150 S.W.3d 1 (Ky. 2004). Indeed, the Commission serves as the "ultimate decision-maker in occupational safety and health cases[.]" *Sec'y, Lab. Cabinet v. Boston Gear, Inc., a Div. of IMO Indus., Inc.*, 25 S.W.3d 130, 133 (Ky. 2000). Thus, the Commission does not have to defer to the Cabinet; and, indeed

---

[2] As the decision was handed down after briefing in this case, this Court allowed the parties to tender supplemental briefing on the issue and to address it at oral argument.

neither the Circuit Court nor the Commission gave any deference to the Cabinet's interpretation of the regulation as finding Kalkreuth in violation.

Furthermore, the Kentucky Supreme Court has also recognized that the courts have the ultimate responsibility in matters of statutory construction, and a reviewing court is not bound by an administrative body's interpretation of a statute. *Board of Educ. of Fayette County v. Hurley-Richards*, 396 S.W.3d 879, 885-86 (Ky. 2013) (citing *Delta Air Lines, Inc. v. Commonwealth, Revenue Cabinet*, 689 S.W.2d 14, 20 (Ky. 1985)).  On issues of law, courts are "authorized to review . . . on a *de novo* basis." *Aubrey v. Office of Attorney General*, 994 S.W.2d 516, 519 (Ky. App. 1998).  An agency's interpretation is only valid if it "complies with the actual language of the regulation." *Comprehensive Home Health Servs., Inc. v. Pro. Home Health Care Agency, Inc.*, 434 S.W.3d 433, 442 (Ky. 2013) (quoting *Hagan v. Farris*, 807 S.W.2d 488, 490 (Ky. 1991)).

## III.    INTERPRETING THE REGULATION AND THE DEFINITION

The legal *regulation* that is the subject of this appeal, 29 C.F.R. § 1926.501(b)(10), was adopted in 803 Kentucky Administrative Regulation ("KAR") § 2:412(2), and provides as follows:

> Roofing work on Low-slope [*sic*] roofs.  Except as
> otherwise provided in paragraph (b) of this section, each
> employee engaged in roofing activities on low-slope [*sic*]
> roofs, with unprotected sides and edges 6 feet (1.8 m) or
> more above lower levels shall be protected from falling
> by guardrail systems, safety net systems, personal fall

arrest systems, or a combination of warning line system and guardrail system, warning line system and safety net system, or warning line system and personal fall arrest system, or warning line system and safety monitoring system.

By its clear and unambiguous terms, the language of the regulation provides three types of fall-protection systems: guardrails, safety nets, or personal fall arrest systems. It also provides for supplemental protection with a warning line system used in conjunction with any of these three protections, as well as with a fourth type of safety monitoring system. The three specified fall protections alone do not require the use of a supplemental warning line system. The use of a warning line system only appears in the regulation in conjunction with the three, or four, other mechanisms. Nowhere does this regulation state that a warning line system coupled with any of the additional three or four protections is required within the warning line system. And the regulation only applies to flat or low-sloping roofs, where the danger is less than a steep-sloping roof.

The *definition* of "warning line system" as set out in 29 C.F.R. § 1926.500(b), further clarifies as follows:

Warning line system means a barrier erected on a roof to warn employees that they are approaching an unprotected roof side or edge, and which designates an area in which roofing work may take place *without the use of guardrail, body belt, or safety net systems to protect employees in the area*.

(Emphasis added.)

The Ellis letter and its progeny specifically expound upon the regulation and definition to note that the warning line system operates on its own to protect those workers within its perimeter by establishing a barrier to prevent them from stepping outside of it closer to the edge of the roof. When work needed to be performed outside the warning line, supplemental protection – in the form of the three or four mechanisms listed above in the regulation – is required. Thus, the Ellis letter and progeny harmonized and elucidated the regulatory language and the definition.

The Commission agrees with this non-binding advice, concluding that the regulation unambiguously permitted Kalkreuth to use a warning line system alone as fall protection when its workers stayed within the line's boundary. However, when workers ventured beyond the line on a low-slope or flat roof, a supplemental fall-protection method was needed. The National Roofing Contractors' Association, which filed an *Amicus Curiae* brief in this case with leave of Court, endorses this viewpoint.

The Commission notes that the regulation explicitly affords the employer the right to select which of the seven, delineated methods that it will use to obtain compliance. The Commission agrees with the Cabinet that the regulation unambiguously mandates supplemental fall protection for the four methods out of seven that use a warning line system – but only where workers venture beyond the

line.  The Commission believes, however, that the Cabinet's interpretation would cause the regulation to contradict its concomitant definition by adding to the narrow terms of the regulation to make it mandate a second type of fall protection even when employees are working within the warning line system.  In part because this reading would make the warning line entirely superfluous, the Commission thus rendered a decision stating that a guardrail, safety net, personal fall arrest system, or safety monitoring system are not required unless a worker moves outside the warning line system.  Because Kalkreuth's employees were only working within the warning line system, the Commission found that the Cabinet failed to prove a violation of the regulation.

In its opinion, the Circuit Court concluded that the Commission's interpretation of the regulation was reasonable and "not arbitrary."  The Circuit Court also pointed out that the Commission's interpretation is supported by OSHA's Technical Manual, which provides that "[a]ny employee performing roofing work between the warning line and the roof edge must be protected using *another* form of fall protection."[3]  (Emphasis added.)  While the Circuit Court gave deference to the Commission's interpretation of the regulation, it concluded

---

[3] The language in the Technical Manual closely tracks to 29 C.F.R. § 1926.502(f)(3), which specifies that, "[n]o employee shall be allowed in the area between a roof edge and a warning line unless the employee is performing roofing work in that area."

that the Commission's reading was most consistent with the entire regulatory scheme.

As previously noted, this Court conducts a *de novo* review on matters of law, including the initial question of ambiguity, giving no deference to another body's legal analysis. In interpreting the regulation, "the same rules apply that would be applicable to statutory construction and interpretation." *Revenue Cabinet, Commonwealth v. Gaba*, 885 S.W.2d 706, 708 (Ky. App. 1994). The most commonly-stated rule in statutory interpretation is that the plain meaning of the statute controls. *Lamb v. Holmes*, 162 S.W.3d 902 (Ky. 2005). We adhere to the plain-meaning rule "unless to do so would constitute an absurd result." *Executive Branch Ethics Commission v. Stephens*, 92 S.W.3d 69, 73 (Ky. 2002). "In construing statutory provisions, it is presumed that the legislature did not intend an absurd result." *Commonwealth*, *Cent. State Hosp. v. Gray*, 880 S.W.2d 557, 559 (Ky. 1994). *See also Brown-Forman Corp. v. Miller*, 528 S.W.3d 886, 895 (Ky. 2017). "General principles of statutory construction hold that a court must not be guided by a single sentence of a statute but must look to the provisions of the whole statute and its object and policy." *Cnty. of Harlan v. Appalachian Reg'l Healthcare, Inc.*, 85 S.W.3d 607, 611 (Ky. 2002). "No single word or sentence is determinative, but the statute as a whole must be considered." *Id.*

The Cabinet states that 29 C.F.R. § 1926.501(b)(10) is not ambiguous and plainly requires the use of a second type of fall protection anytime that a warning line system is used. The Cabinet further maintains that the Commission and the Circuit Court created the ambiguity only by reading this section in conjunction with the codified definition of warning line system.

We disagree. While we give no deference to the Ellis letter in reaching our conclusion, we note that it does have some relevance here. Under the doctrine of contemporaneous construction, an agency's interpretation of a statute or regulation, once made and applied over a long period of time, cannot be unilaterally revoked by the agency and without notice. *Revenue Cabinet v. Lazarus, Inc.*, 49 S.W.3d 172, 174 (Ky. 2001) (citing *GTE v. Revenue Cabinet*, 889 S.W.2d 788, 792 (Ky. 1994), *superseded by statute on other grounds as recognized in Miller v. Johnson Controls, Inc.*, 296 S.W.3d 392, 395 (Ky. 2009)). Thus, the Ellis letter and its progeny, although not binding, may demonstrate a long-standing interpretation of a regulation. The parties agree that the Commission's interpretation of the regulation is consistent with both state and federal interpretations going back to at least 1995.

This case presents a matter of first impression on a novel theory recently advanced by the Cabinet. After careful review, we hold that the regulation of 29 C.F.R. § 1926.501(b)(10) is unambiguous. Thus, we owe no deference to

any agency interpretation under *Chevron* or *Loper*. We disagree that the regulation becomes somehow unclear when read in conjunction with the definition of warning line system provided in the same section of the regulation.

At the outset, we must note that the intent of the regulation and accompanying definition is abundantly clear. The provision of fall protection to workers is paramount. And the safety systems at issue here only apply to flat or low-sloping roofs where the more burdensome protections are not warranted. One of the many types of fall protection is the warning line system, but it is not the sole method available, and it is not always required. This point is beyond dispute.

Furthermore, the regulations and definitions are not new. And yet, this is the first challenge of this nature. We could find no corresponding litigation in the state and federal systems. It has not escaped our notice that this issue has not occurred before anywhere in this highly regulated industry, which must operate pursuant to clear standards that are uniformly enforced.

However, while we find the regulation and definition are not ambiguous and do not conflict, it is obvious that they do not offer a model of clarity. The definition specifically references a "guardrail, body belt, or safety net system." 29 C.F.R. § 1926.500(b). The regulation, however, references a "guardrail" and a "safety net," but it does not mention a "body belt," and instead

cites a "personal fall arrest" and a "safety monitoring system."  29 C.F.R. §

1926.501(b)(10).[4]

Further compounding any obscurity, the regulation and definition of

warning line system both imply without clearly stating that the barrier alone is

sufficient within the line, and supplemental protection is only required beyond it.

The definition is not well-written, and it can be read in a manner to cause it to fail

to make inherent sense.  Its terms reference an unprotected area and then

immediately say that work may take place without the use of safety systems.

But it would be absurd to read the definition to mean that supplemental protection

is not needed in the unprotected area.  It would be much better if it read as follows

with added language in brackets:

> Warning line system means a barrier erected on a roof to
> warn employees that they are approaching an unprotected
> roof side or edge[.]  [The area within the barrier {leaving
> out "and" and "which"}] designates an area in which
> roofing work may take place without the use of guardrail,
> body belt, or safety net systems to protect employees in
> the area.

29 C.F.R. § 1926.500(b).  However, even without the adding of clarifying

language, this meaning is clearly implied.  The supplemental protections only

---

[4] At oral argument, the Cabinet asserted that the definition of "warning line system" in 29 C.F.R. § 1926.500(b) is outmoded because, "[e]ffective January 1, 1998, body belts are not acceptable as part of a personal fall arrest system."  29 C.F.R. § 1926.502(d).  However, 29 C.F.R. § 1926.500(b) continues to include a definition of "body belt."  Furthermore, the use of a body belt is permissible in a positioning system device under 29 C.F.R. § 1926.502(e).  Regardless, the Cabinet's main point is that some form of supplementation is required, body belt or otherwise.

make sense when they are required outside the line. If additional systems were needed within the barrier, no warning line system would be needed. If a warning line system is heeded within, then no supplemental protection would be warranted because no one would be outside of it. Thus, while the definition and the regulation are different, they are not mutually exclusive.

Similarly, the language in the regulation itself specifically provides that four types of fall protection may be used without a warning line. When a warning line is used, the supplemental protections are required. Again, by necessary implication, those protections would only be needed outside the line. If they were needed inside the line as well, then there would be no need or provision for the warning line, because the other four methods are clearly and unambiguously permitted to be used alone and without the line at all.

We are required to give statutory words their plain meaning. Any finding that the second type of fall protection is required when employees are working inside of the warning line barrier would be a strained interpretation that would render the use of a warning line superfluous. And, it would compel us to throw out the legislature's definition entirely, which is inconsistent with the mandated legal principle of giving effect to the language used. As Kalkreuth and the *Amicus Curiae* brief note, the use of a warning line to delineate where additional protections are needed closer to the edge of the roof reinforces the intent

of the regulations – to ensure that employees working on a roof that is greater than 50 feet in length and more than six feet above ground are protected from falls. The protection is necessarily greater outside the line where the risk of injury is higher. Thus, we must conclude that the Circuit Court and the Commission did not err by interpreting the regulation as not requiring supplemental protection for the work performed by Kalkreuth's employees inside the warning line.

## IV. CONCLUSION

Accordingly, we affirm the Opinion and Order of the Franklin Circuit Court dismissing the citation and penalty.

ALL CONCUR.

BRIEFS FOR APPELLANT
KENTUCKY EDUCATION AND
LABOR CABINET DEPARTMENT
OF WORKPLACE STANDARDS:

John R. Rogers
Frankfort, Kentucky

ORAL ARGUMENT FOR
APPELLANT:

Haley Kincer
Frankfort, Kentucky

BRIEFS AND ORAL ARGUMENT
FOR APPELLEE KENTUCKY
OCCUPATIONAL SAFETY AND
HEALTH REVIEW COMMISSION:

E.H. "Chip" Smith, IV
Frankfort, Kentucky

BRIEFS AND ORAL ARGUMENT
FOR APPELLEE KALKREUTH
ROOFING AND SHEET METAL,
INC.:

Joyce Ann Merritt
Lexington, Kentucky

BRIEF FOR *AMICUS CURIAE*
NATIONAL ROOFING
CONTRACTORS ASSOCIATION:

F. Laurens Brock
Nashville, Tennessee

Trent H. Cotney
Kyle C. Rea
Carter J. Pope
Tampa, Florida