## BINNEY ET AL. *v.* LONG, COMMISSIONER OF CORPORATIONS AND TAXATION.

No. 77. Argued November 17, 1936.—Decided December 14, 1936.

*Mr. Talcott M. Banks, Jr.,* with whom *Mr. R. Ammi Cutter* was on the brief, for appellants.

*Mr. James J. Ronan,* Assistant Attorney General of Massachusetts, with whom *Mr. Paul A. Dever,* Attorney General, was on the brief, for appellee.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

This appeal is from an order denying abatement of succession taxes assessed in respect of the estate of Hetty S. L. Cunningham, late a resident of Brookline, Massachusetts. Mrs. Cunningham died intestate in August, 1931, leaving as her sole heirs four children, who, with the trustees and certain beneficiaries of three trusts wherein she had life estates, were the petitioners below and are the appellants here. She left a substantial estate of her own which descended to her four children. Their succession to this estate was taxed, the tax was paid, and its legality is not questioned. Pursuant to the terms of the three trusts, her four children succeeded, upon her death, to the ownership and possession of certain property whereof she had been life tenant with power of appointment of principal; and succeeded to the enjoyment as life beneficiaries of other property as to which she had preceded them as life tenant. The appellee held the succession to the trust property taxable, and added the value of the corpus of Mrs. Cunningham's own estate and that of the interests to which the appellants succeeded upon her death, with the result that the trust interests took a higher rate. The taxes assessed upon the three trust interests were paid, and a petition was filed in the probate court for abatement in the view that the exaction was forbidden by Article I, § 10, and the Fourteenth Amendment of the Federal Constitution. The probate court reserved the questions, the Supreme Judicial Court decided them adversely to appellants,[1] and upon its rescript the petition was denied.

In 1877 Mrs. Cunningham (then Hetty Sullivan Lawrence) conveyed property in trust reserving a life estate in the income but no power to revoke, alter or amend.

---

[1] Mass. Adv. Sheets, 1936, p. 153; 199 N. E. 528.

The income was to be paid for twenty years after her death "to and among such of" her children as "may be living at the time of payment," living issue of a deceased child to take by right of representation. If, at her death, or at any time during the twenty years thereafter, no child or issue of hers should be living the trustees were to transfer the principal to the heirs of her father, if he were then dead; otherwise, to her own heirs. She married and had five children, one of whom, born in 1892, died in 1923, without issue. The others, born between 1885 and 1890, are appellants.

In 1862 Amos A. Lawrence, the intestate's father, paid a sum of money to an insurance company which agreed to pay the income to the intestate and, upon her death, to distribute the principal and any unpaid income, to such persons as she might, by will, appoint, and in default of appointment, to her surviving children.

Sarah E. Lawrence, the intestate's mother, died May 27, 1891. Her will bequeathed property in trust to pay the income to each of her six children, two of whom still survive, and to the issue, *per stirpes*, of any deceased child so long as any of her children should live. For twenty years after the death of the last survivor of her children the income was to be paid to her grandchildren and their issue, *per stirpes*, and, at the expiration of that period, the principal was to be divided between the grandchildren, *per capita*, descendants of a deceased grandchild to divide his or her share *per stirpes*. Each child of Sarah E. Lawrence was empowered to "appoint the shares in which" the income given to his or her children and issue "shall be apportioned among such children and issue" and further to appoint the proportions in which the principal "shall be divided among such children and issue." Under this provision the four children of Mrs. Cunningham, who are appellants, succeeded to equal life estates in their mother's share, she having failed to exercise her power.

When the trusts were created Massachusetts imposed no inheritance or succession tax. The first statute imposing such a tax [2] applied only to collateral inheritance and excluded devolution to lineal descendants. In 1907 a law was enacted taxing testamentary devolution of property to lineal descendants;[3] this made no mention of powers of appointment; the tax was graduated according to amounts and relationships, but there was no requirement of aggregation of various interests passing and accruing to a single beneficiary from or on account of the death of a decedent to ascertain the rate of tax. Such a provision for uniting interests was enacted in 1924,[4] and incorporated with the first section of the act of 1907 as amended into a single section.[5]

The act of 1907 and its amendments were prospective in operation and exempted estates of those who had died prior to its effective date.[6] This exemption has extended to all interests which passed or accrued upon the death of Sarah E. Lawrence, the intestate's mother.

In 1909 provision was made for a succession tax upon the occasion of the exercise of, or nonexercise of, powers of appointment.[7] This, in its present form, is § 2 of chapter 65 of the General Laws.[8] The effective date of this provision was declared to be September 1, 1907, which was the effective date of the 1907 act, and was twenty-one months prior to the effective date of the 1909 act in which the provision is embodied. It is conceded that there are no other statutes purporting to tax succession under nontestamentary gifts.

---

[2] Acts 1891, c. 425.

[3] Acts 1907, c. 563, effective Sept. 1, 1907.

[4] Acts 1924, c. 128.

[5] General Laws (Ter. ed.) c. 65, § 1.

[6] General Laws (Ter. ed.) c. 65, § 36.

[7] Acts of 1909, c. 527, § 8.

[8] General Laws (Ter. ed.) c. 65, § 2.

The acts are compiled in the General Laws of the Commonwealth, and, so far as material to the present controversy, are:

General Laws (Ter. ed.) c. 65:

"Section 1. All property within the jurisdiction of the commonwealth, corporeal or incorporeal, and any interest therein, belonging to inhabitants of the commonwealth . . . , which shall pass by will, or by laws regulating intestate succession, or by deed, grant or gift, except in cases of a bona fide purchase for full consideration in money or money's worth, made in contemplation of the death of the grantor or donor or made or intended to take effect in possession or enjoyment after his death . . . to any person, absolutely or in trust . . . shall be subject to a tax at the percentage rates fixed by the following table:

[A table of graduated rates here appears.]

"Provided, however, that no property or interest therein, which shall pass or accrue to or for the use of a person in Class A, except a grandchild of the deceased, unless its value exceeds ten thousand dollars, and no other property or interest therein, unless its value exceeds one thousand dollars, shall be subject to the tax imposed by this chapter, and no tax shall be exacted upon any property or interest so passing or accruing which shall reduce the value of such property or interest below said amounts.

"All property and interests therein which shall pass from a decedent to the same beneficiary by any one or more of the methods hereinbefore specified and all beneficial interests which shall accrue in the manner hereinbefore provided to such beneficiary on account of the death of such decedent shall be united and treated as a single interest for the purpose of determining the tax hereunder.

"Section 2. Whenever any person shall exercise a power of appointment, derived from any disposition of property made prior to September first, nineteen hundred and

seven, such appointment when made shall be deemed a disposition of property by the person exercising such power, taxable under section one, in the same manner as though the property to which such appointment relates belonged absolutely to the donee of such power, and had been bequeathed or devised by the donee by will; and whenever any person possessing such a power of appointment so derived shall omit or fail to exercise the same within the time provided therefor, in whole or in part, a disposition of property taxable under section one shall be deemed to take place to the extent of such omission or failure in the same manner as though the persons thereby becoming entitled to the possession or enjoyment of the property to which such power related had succeeded thereto by a will of the donee of the power failing to exercise such power, taking effect at the time of such omission or failure."

 .  .  .  .  .

"Section 36. This chapter shall apply only to property or interests therein passing or accruing upon the death of persons dying on or after May fourth, nineteen hundred and twenty, and as to all property and interests therein passing or accruing upon the death of persons who have died prior to said date the laws theretofore applicable shall remain in force; but so much of this chapter as relates to property or interests therein passing by deed, grant or gift completed inter vivos in contemplation of death shall apply only to such deeds, grants or gifts made on or after May twenty-seventh, nineteen hundred and twenty."

### THE 1877 TRUST.

The trust created by the intestate in 1877, by deed *inter vivos*, reserved no power of revocation or alteration and, in this respect, differed from that under consideration in *Saltonstall* v. *Saltonstall*, 276 U. S. 260. The appel-

lants insist that the invalidity of § 1, *supra,* as applied to their succession is established by *Coolidge* v. *Long,* 282 U. S. 582, since to tax them would under the doctrine of that case impair the obligation of the intestate's contract, and deprive them of property without due process. The court below thought that case not controlling because, there, the remainders were vested from the date of the gift, whereas, here, the interests of appellants were executory or, at the best, contingent remainders which never vested until the intestate's death. In *Coolidge* v. *Long* this court concluded that the tax laid by the act of 1907 offended the contract and due process clauses of the Federal Constitution because the interests of the remaindermen had vested at the date of the creation of the trust many years prior to the passage of the taxing act. It was held that the mere taking possession of that which had been vested in the beneficiaries for many years did not amount to a taxable occasion and constitutionally could not be so designated by the Commonwealth in view of the complete vesting of the beneficiaries' estates in remainder at the date of the execution of the deed.

The Supreme Judicial Court, following an unbroken line of authority in Massachusetts, and in accordance with the common law [9] and the law as declared by this court [10] holds that the appellants' estates, under the trust instrument of 1877, were, at most, contingent remainders which did not vest until after the intestate's death, and hence the transfers to them fell clearly within the statutory definition as made to take effect in possession or enjoyment after the donor's death. The appellants urge that, in imposing a succession tax, the state should disregard technical rules relating to the vesting of interests and look to the substance; and they insist that for many

---

[9] 1 Fearne, Contingent Remainders, (10 ed.) 397, 398; Gray, Perpetuities (3 ed.) 86.

[10] *Wright* v. *Blakeslee,* 101 U. S. 174, 177.

years prior to 1907 those who were to take in succession to the intestate were ascertained, subject only to the contingency that, as in *Coolidge* v. *Long,* some of them might fall out of the class by death. The contention was made and rejected in *Coolidge* v. *Long.* The fact that the remainders were vested from the date of the deed, and the interests of those who took in remainder were merely subject to be defeated by a condition subsequent, was the basis for the conclusion that the tax could not constitutionally be laid upon the occasion of their acquiring physical possession of what had, in the eye of the law, long been their property. Having relied on legal rather than practical considerations to invalidate the tax in *Coolidge* v. *Long,* it would be inconsistent here to rely on practical rather than legal considerations to invalidate the same tax. The Commonwealth was not prevented by the constitutional provisions which the appellants invoke from taxing the succession under the 1877 trust upon the occasion of the intestate's death since the appellants' estates never vested until that event.

As Mrs. Cunningham's death was the occasion for a tax upon the succession of those who take in remainder after her life estate, we can conceive of no constitutional objection to the statutory provisions for uniting the interest thus derived with that which the appellants acquired in Mrs. Cunningham's own property at her death, and calculating the rate on the total according to a sliding scale.

### THE 1862 TRUST.

The act of 1907, (§ 1, *supra*) does not purport to tax complete and irrevocable transfers *inter vivos,* not in contemplation of the donor's death, made subsequent to the effective date of the act. The 1862 contract was not made in contemplation of the grantor's death; it became effective when executed. Such a transfer made to-day would result in no tax upon the interest acquired by the

life tenant or·upon those interests resulting from her exercise or non-exercise of her power of appointment. By the act of 1909, however, (§ 2, *supra*) the legislature, while not attempting to tax the interests of the appellants as derived in succession to Amos A. Lawrence, does essay to tax those interests as derived from the intestate as the holder of a power of appointment under Amos A. Lawrence's contract. But the statutes do not tax similar interests the enjoyment of which depends upon the exercise or nonexercise of a power embodied in a deed effective after September 1, 1907. The law, therefore, creates two classes,—the one composed of beneficiaries who take at the death of the donee of a power created by an instrument antedating 1907, who are taxed,—and the other of beneficiaries who take in succession to the donee of a power conferred by a deed executed subsequent to 1907, who are not taxed. Upon its face the statute arbitrarily selects a past date, taxing the beneficiaries of an act if done prior to, and leaving untaxed beneficiaries of a precisely similar act if done subsequent to that date. In justification of the discrimination the court below suggests that any change in the state's policy of taxation must take effect at some point of time. The truth of this statement is obvious, but the appellants' complaint is not directed at the fact that inheritances occurring prior to the effective date of the act of 1907 have escaped taxation while those happening thereafter are subjected to the exaction. The claim that the statutes deny equal protection is based upon quite another sort of discrimination. Succession consequent upon testamentary gifts (that is those made by will, or in contemplation of death or to take effect in possession or enjoyment after death) made or to take effect after the date of the act is the subject of the excise. The succession to non-testamentary gifts made subsequent to the effective date of the act of 1907 is not taxed whether the

person coming into ownership and enjoyment of property does so by virtue of the direct gift of the former owner or by virtue of the exercise or non-exercise of a power of appointment vested by the former owner in a third party. Thus the future policy of the Commonwealth is declared to be that those who benefit by a testamentary gift are to be taxed while those who benefit, either immediately or remotely, from a complete and irrevocable gift *inter vivos* are not to be taxed. On the other hand, the statutes declare that one who benefits remotely through the exercise or non-exercise of a power under an absolute gift long since completed is to bear the burden of the exaction. This is not the declaration of a new policy effective after the promulgation of the legislation. On the contrary the statutes declare the policy to be the exemption for the future of a well-known type of succession, while at the same time imposing a tax on the identical type if resulting from a past gift.

Neither the appellee nor the Supreme Judicial Court advances any satisfactory reason for this difference in treatment of persons similarly circumstanced.

The Supreme Judicial Court states:

"The legislative intent possibly was to tax succession under St. 1907, c. 563, not as from the donee but from the donor of the power. Whatever the reason, the classification cannot be pronounced arbitrary or unreasonable. The tax operates equally and uniformly as to all within this class. It may fairly have been deemed by the General Court to be founded in the 'purposes and policy of taxation.' "

Instead of assigning any reason for the discrimination the statement merely points out that two classes are created, those who are taxed and those who are not, and since all who are taxed are treated alike and all who are exempt are treated alike the statute is uniform in opera-

tion upon each class; and thus falls short of meeting the question for decision.

As we have noted, the only basis for the classification is the time when the estate was created. This court has said that a tax on gifts *inter vivos,* so laid as to hit those made within a given period prior to the donor's death and exempting all others, would be wholly arbitrary. *Schlesinger* v. *Wisconsin,* 270 U. S. 230. And we have also said that a discrimination in the taxation of loans based solely upon the time when the loan was made would clearly be arbitrary and capricious. *Colgate* v. *Harvey,* 296 U. S. 404, 425.

It is said that prior to the passage of the act of 1909, succession derived through a power granted by an instrument effective before September 1, 1907, escaped taxation although the interest of the beneficiary really had its origin subsequent to that date; and thereby the Commonwealth unfairly lost taxes which were its due, and discrimination resulted between beneficiaries under trusts created before and after September 1, 1907. The argument, however, overlooks the fact that a transfer through a power created after September 1, 1907, is, notwithstanding the act of 1909, still wholly untaxed where, as in the case of the trust under consideration, the power is to be exercised by a third party and the gift is not made in contemplation of the settlor's death. We fail to see how fairness, either to the Commonwealth or its citizens, is promoted by taxing the appellants, the beneficiaries of a trust made many years before the succession tax laws were adopted, while exempting beneficiaries similarly situated in all respects save only that the trust was created after September 1, 1907. The discrimination becomes the more glaring when it is remembered that the tax is increased by the aggregation of the interest passing to the beneficiaries under the 1862 contract with that which they derive by inheritance from the intestate. Thus, a

beneficiary taking through a power under an *inter vivos* non-testamentary trust, created after September 1, 1907, would not have to·aggregate the interest so derived with property inherited from the donee of the power, whereas one taking, as do the appellants, under a power in a deed executed in 1862 is compelled, by aggregation of the interests, to pay at a much higher rate on the property derived through the power.

In view of the hostile discrimination against a class of remaindermen arbitrarily singled out for taxation from all those similarly situated, we are bound to hold the statutes deny the equal protection of the laws in contravention of the Fourteenth Amendment.

### THE 1891 TRUST.

In their operation upon the trust created in 1891 by the will of Sarah E. Lawrence, the statutes discriminate between the appellants and others similarly situated. The discrimination differs in kind from that exhibited in the case of the 1862 trust, but is equally hostile and arbitrary.

When Mrs. Lawrence died in 1891, the interests created in her lineal descendants were wholly exempt from taxation. When, in 1907, the Commonwealth adopted a policy of taxing succession by lineals, the statute said nothing of powers of appointment. Nevertheless, under that act, had it been in force when Mrs. Lawrence died, the intestate, her daughter, would have paid a tax upon the value of the life estate given her by her mother's will, and the appellants when they came into possession of remainder interests, upon the intestate's death, would likewise have been compelled to pay a tax upon their succession to Mrs. Lawrence's estate. The act of 1909 (§ 2, *supra*) recognizing that the act of 1907 (§ 1, *supra*) does not apply to the succession generated at the death of Mrs. Lawrence, nevertheless pitches upon the fact that under her will the intestate had a power of appointment and

makes the takers of Mrs. Lawrence's property in succession to the intestate liable for a tax as if the property had descended from the intestate. As directed by § 1 the appellee aggregated the interest falling to the appellants under their grandmother's will with that coming to them from their mother under the intestate law. Thus, the interest derived under the 1891 trust is taxed in the higher brackets at four per cent. whereas had it been created by a will effective after September 1, 1907, the tax would be computed as upon a succession to Mrs. Lawrence's estate alone, and at a rate of one per cent.

The same considerations which have been stated in respect of the 1862 trust are controlling as to this one. We think it an arbitrary and unreasonable discrimination that the beneficiary of a power must aggregate the interest so derived with that enjoyed by inheritance of property owned in fee by the donee of the power, if the instrument creating the power antedates 1907, but need not so aggregate the interests for the purpose of taxation if the creation of the power be subsequent to 1907. The consequence that the one must pay at a higher rate on the interest falling in at the death of the donee of the power than the other who takes by reason of an exactly similar event, denies the equal protection of the law to the former.

The argument that the act of 1909 tends to render collection of taxes more certain by accelerating the time of payment and making the executors the collectors of the tax is answered by the provisions of § 7 of c. 65 of the General Laws (Ter. ed.). Remaindermen become liable for the tax, not at the death of the donor, but when they come into possession and enjoyment of the property at the expiration of a life estate or term of years. The tax on their succession is then payable by any fiduciary who then holds the property, and, if none is in office, by the beneficiaries themselves. It cannot

therefore successfully be contended that the act of 1909 was adopted with a view to earlier or more certain collection of the tax.

The Commonwealth seeks to support the statutes upon well known principles: that the guaranty of equal protection does not compel adoption of an iron rule of equal taxation, preclude variety in taxation, or forbid classification of subjects if the discrimination is founded upon a reasonable distinction or if any state of facts reasonably can be conceived to sustain it; and that where the evident purpose is to deal fairly and equitably in classifying the subjects of taxation, a statute will not be condemned because of minor and incidental hardships or inequalities due not to a hostile purpose but to inherent difficulties or inadvertence. The claim is that the discrimination against the appellants is justified by either or both of these principles. While this court always accords great weight to the judgment of a state legislature, we cannot agree that there is here a fair basis for difference of treatment. All that is said in defense of the statute is that it treats alike all those who take under instruments executed prior to an arbitrary past date, and treats alike all those who take under instruments made subsequently to the same arbitrary date, and that the legislature may have found some reason for the discrimination in the state's policy of taxation. But this is merely to say that arbitrary classification which is the result of the exercise of the legislative will must be sustained. The alternative and inconsistent contention that the discrimination is the result of inadvertence, cannot prevail. The act of 1907 was prospective in its operation. Knowing that that act did not reach successions under deeds or wills effective prior to September 1, 1907, the legislature adopted the acts of 1909 and 1924 to put those who succeeded to remainder interests created prior to September 1, 1907, into a taxable class while

leaving wholly exempt or taxing on a different basis and at a different rate remaindermen taking under instruments effective subsequent to September 1, 1907. To suggest that this was an attempt to bring about equality which failed through inadvertence is to be blind to the obvious purpose and intent of the legislature. Action could not have been more deliberate.

The judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*Reversed.*

MR. JUSTICE STONE took no part in the consideration or decision of this case.

MR. JUSTICE CARDOZO, dissenting in part.

I am unable to concur in so much of the opinion of the court as invalidates the tax upon the interests passing to the appellants under the deed of 1862 and reduces the amount of the tax under the will of 1891.

On September 1, 1907, the Commonwealth of Massachusetts laid a tax upon the subject of any transfer to take effect in possession or enjoyment after the death of a donor, whether the succession was brought about by will or intestacy or gift *inter vivos*. Acts 1907, c. 563. This court held in *Coolidge* v. *Long*, 282 U. S. 582, that as to remainders already vested, but dependent upon an estate for life, the tax so imposed is a denial of due process, though the life estate did not end until after the passage of the statute. In 1909 the legislature of the Commonwealth enacted another statute providing in substance that where the transfer becomes complete through the exercise or non-exercise of a power of appointment (cf. *Saltonstall* v. *Saltonstall*, 276 U. S. 260, 270, 271; *Guaranty Trust Co.* v. *Blodgett*, 287 U. S. 509, 511) the succession shall be deemed to have been derived from the donee of the power, if the power had its origin in a disposition of property made before September 1, 1907, and

if made after that date, from the donor of the power. Acts 1909, c. 527, § 8: G. L. (Tercentenary Ed.) c. 65, § 2. Is the result of that amendment an unlawful discrimination when applied to the deed of 1862 and the exercise or non-exercise of the power there created?

If succession must be treated as derived from the donor, irrespective of the date when the power was created, many interests will go free that in fairness should contribute their quota to the fisc. "Whatever be the technical source of title of a grantee under a power of appointment, it cannot be denied that in reality and substance it is the execution of the power that gives to the grantee the property passing under it." *Matter of Dows,* 167 N. Y. 227, 231; 60 N. E. 439; aff'd *sub nom. Orr* v. *Gilman,* 183 U. S. 278, 287; *Matter of Delano,* 176 N. Y. 486; 68 N. E. 871; aff'd *sub nom. Chanler* v. *Kelsey,* 205 U. S. 466, 478. This court has held that a legislature does not violate the Fourteenth Amendment by giving heed to these realities when taxing a succession. *Orr* v. *Gilman, supra; Chanler* v. *Kelsey, supra.* The cases that have been cited had their origin in New York. For a time the tax laws of Massachusetts were drawn along stricter lines. *Emmons* v. *Shaw,* 171 Mass. 410, 413; 50 N. E. 1033. Until the Act of 1909, a transfer through a power, if made under an instrument effective before September, 1907, escaped taxation altogether, though the gift in substance and reality may have had its origin thereafter. Acts 1907, c. 563, § 25; cf. *Saltonstall* v. *Saltonstall, supra;* also *Saltonstall* v. *Saltonstall,* 256 Mass. 519, 522, 525; 153 N. E. 4. This was unfair to the Commonwealth. It was perhaps unfair to legatees who were taxable under gifts of later date. But the evil, however patent, was not subject to correction through the medium of a uniform rule taxing the succession under every power of appointment exercised thereafter, and taxing it as derived from the primary donor. Such a method of assessment would be adequate in its application to instruments to be executed in the

future, but quite inadequate as to instruments executed in the past. There was need for a distinction based on difference in time.

One may take for illustration a will made in 1914, seven years after the Act of 1907, and another made in 1900, seven years before. Each, let it be assumed, provides for a life estate, with power to the life tenant to appoint the remainder, and with a gift over to children in default of an appointment. The life tenants die in 1921. If an assessment is made upon the right of succession under the will of later date, there will be no difficulty in collecting the tax, economically and swiftly, out of the estate of the donor. The power having been created after 1907, the executors will be under a duty to retain so much of the estate as may be necessary to pay the tax in full. But in respect of the 1900 will, the situation is very different. The probability is that before the adoption of the statute the executors under that instrument will have been given their discharge. In that event the probate court will no longer have control of the estate, and the Commonwealth will be left to a precarious remedy against remaindermen deriving their possession through the non-exercise of the power, if perchance the failure to exercise it becomes known at all. Estates of subsequent donors will thus be made to bear the burden while those of earlier donors are left substantially immune. The amendment of 1909 corrects that inequality. Has it substituted another to be condemned as more offensive?

The rule is elementary that a state in adopting a system of taxation is not confined to a formula of rigid uniformity. *Swiss Oil Co.* v. *Shanks,* 273 U. S. 407, 413. It may tax some kinds of property at one rate, and others at another, and exempt others altogether. *Bell's Gap R. Co.* v. *Pennsylvania,* 134 U. S. 232; *Stebbins* v. *Riley,* 268 U. S. 137, 142; *Ohio Oil Co.* v. *Conway,* 281 U. S. 146, 150. It may lay an excise on the operations of a

particular kind of business, and exempt some other kind of business closely akin thereto. *Quong Wing* v. *Kirkendall,* 223 U. S. 59, 62; *American Sugar Refining Co.* v. *Louisiana,* 179 U. S. 89, 94; *Armour Packing Co.* v. *Lacy,* 200 U. S. 226, 235; *Brown-Forman Co.* v. *Kentucky,* 217 U. S. 563, 573; *Heisler* v. *Thomas Colliery Co.,* 260 U. S. 245, 255; *State Board of Tax Comm'rs* v. *Jackson,* 283 U. S. 527, 537, 538. What is true of division into classes according to subject matter must be true of division into classes dependent upon time. The temporal arrangement must have its origin, to be sure, in something more than whim or fantasy, a tyrannical exhibition of arbitrary power. If that reproach has been avoided, the classification does not fail because the burdens before and after are not always and everywhere in perfect equilibrium.

From all this it follows that a distinction between wills or deeds effective before 1907 and those effective afterwards—the exercise or non-exercise of powers under instruments of the first class giving rise to a succession to be taxed as a bequest from the donee, and the exercise or non-exercise of powers under instruments of the second class to be taxed as a bequest from the donor—is not rooted in caprice. The point of time which separates the classes is not interjected arbitrarily or by an exertion of brute force, but corresponds to the behests of a rational taxonomy. This being so, the division ought not to fail because the deed of 1862 was framed in such a way that succession thereunder would not have been taxable to any one, either the estate of the donor or that of the donee, if a like deed had been executed after the passage of the statute. A legislature cannot be expected in drafting legislation to think out every conceivable situation in which the members of one class will bear a heavier burden than the members of another. Under the statute challenged as invalid many deeds *inter vivos* continue to be taxable irrespective of their date. An interest in re-

mainder to take effect in possession or enjoyment through the exercise or non-exercise of a power of appointment after the death of the donor (*Guaranty Trust Co.* v. *Blodgett, supra*) will gain nothing from the fact that a non-testamentary conveyance brought the power into being. The only reason why this particular interest would be exempt if the deed of 1862 had been made after August, 1907, is because the remainder was so limited that the power might be exercised while the donor was yet alive. Such untoward accidents do not take a method of division out of the domain of the rational into the land of whim and fantasy. Eccentricities of incidence are common, and perhaps inevitable, in every system of taxation. The future would have to be scanned with microscopical powers of vision to foresee and forestall every possible diversity. For present purposes it is enough that the order of events removes the stigma of caprice from a system of classification whereby donees of a power before the passage of the act are treated as grantors, the tax to be laid upon that basis, whereas donors of a power are recognized as the source of the succession in respect of transfers afterwards. *Emmons* v. *Shaw, supra.* "And inequalities that result not from hostile discrimination, but occasionally and incidentally in the application of a system that is not arbitrary in its classification, are not sufficient to defeat the law." *Maxwell* v. *Bugbee,* 250 U. S. 525, 543. Cf. *Metropolis Theatre Co.* v. *Chicago,* 228 U. S. 61, 69, 70; *Salomon* v. *State Tax Comm'n,* 278 U. S. 484, 491.

What has been said as to the deed of 1862 and the power there created applies with equal force to the will of 1891 and to the quantum of the tax payable by the legatees thereunder.

For these reasons I dissent from the modification of the decree and vote to affirm it.

MR. JUSTICE BRANDEIS joins in this opinion.