126           May 28, 2020           No. 8

## IN THE OREGON TAX COURT
## REGULAR DIVISION

### ESTATE OF HELENE J. EVANS,
*Plaintiff,*

*v.*

### DEPARTMENT OF REVENUE,
*Defendant.*

(TC 5335)

On cross-motions for summary judgment, Plaintiff argued that the United States Constitution's Due Process Clause prohibited Oregon from including trust property in Plaintiff's Oregon taxable estate. The trust at issue was a qualified terminable interest property (QTIP) trust that allowed the property of Helene Evans's late husband to pass to her without federal estate taxation. The trust gave Evans trust income for her life and, upon her death, distributed the principal to predetermined beneficiaries. Minimum contacts and a rational relation to values connected with the taxing state must exist for a state tax to abide by the Due Process Clause. *N. Carolina Dept. of Rev. v. The Kimberley Rice Kaestner 1992 Family Trust*, ___ US ___, 139 S Ct 2213, 2219-20, 19 Cal Daily Op Serv 5832 (2019). The full trust value may be included in the estate of a trust beneficiary, even one receiving only trust income and with limited power of appointment. *Whitney v. State Tax Commission of New York*, 309 US 530, 537-39, 60 S Ct 635, 84 L Ed 909 (1940). The court concluded that the inclusion of the trust property did not violate the federal Due Process Clause because Evans was an Oregon domiciliary and had an exclusive lifetime interest in the trust property at the time of her death.

Oral argument on cross-motions for summary judgment was held March 26, 2019, in the courtroom of the Oregon Tax Court, Salem.

Carol Vogt Lavine, Carol Vogt Lavine, LLC, Milwaukie, filed the cross-motion and argued the cause for Plaintiff.

Nate Carter, Assistant Attorney General, Department of Justice, Salem, and Daniel Paul, Senior Assistant Attorney General, Department of Justice, Salem, filed the motion and argued the cause for Defendant.

Decision for Defendant rendered May 28, 2020.

**ROBERT T. MANICKE, Judge.**

This appeal requires the court to decide whether due process prevents Oregon from including in the measure

of its estate tax the value of trust property in which the decedent held solely a lifetime interest in all of the income and a limited interest to receive distributions of principal during life. In this case, the trust in question is a "qualified terminable interest property" trust, also known as a "QTIP" trust.

## I.   FACTS

In 2006, Helene Evans (Helene), born in 1925, married Donald Gillam (Donald), born in 1916. At the time, each had adult children from a prior marriage. The couple resided in California and Montana until December 27, 2011, when Helene sold her home in California and became an Oregon resident. Donald died shortly thereafter, on January 21, 2012. Donald was a Montana resident when he died, and he had never resided in Oregon or owned tangible personal property or real property in Oregon.

Donald's will established a testamentary trust and named his son Con Gillam as trustee. The trust property consisted of intangible property, primarily stocks and bonds, held in brokerage accounts maintained at Montana branches of banks and investment firms. On April 2, 2013, on the motion of Con Gillam as personal representative of Donald's estate, a Montana court modified the portion of Donald's will that created the trust. The court found that Donald's "intention was to transfer his estate free and clear of federal estate taxes" by creating a trust eligible for the "marital deduction pursuant to IRC § 2056(b)(7)(B)," but the court found that the will as executed failed to create a trust that so qualified because it allowed not only Helene, but also Donald's children and others, to receive distributions of income from the trust. The court modified the will by requiring the trustee to "pay all of the net income of this Trust" to Helene, requiring the trustee to pay Helene such principal amounts "as the Trustee determines to be necessary" to support her in her accustomed manner of living, and prohibiting distributions of income or principal to anyone other than Helene during her life. On April 18, 2013, Con Gillam, as personal representative, caused Donald's federal estate tax return to be filed, on which the property in the trust was

deducted as "property passing to QTIP trust." (Form 706,[1] Schedule M); *see* IRC § 2056(b)(7) (2010).

Disputes arose between Donald's trust and Helene regarding the investment of assets in the trust, the allocation of expenses of the estate and the trust, and the amount of income to which Helene was entitled. On September 18, 2014, the same Montana court approved a settlement agreement modifying the terms of the trust as agreed by Helene, Con Gillam and others. As part of the settlement agreement, Helene acknowledged that she had received substantial distributions from the estate and the trust, and the agreement allowed her to retain those amounts. The modification ordered a one-time distribution to Helene of trust principal and precluded further distributions of principal. The modification also created a schedule that defined the amounts of cash payments Helene could receive from the trust for the rest of her life; however, the parties do not dispute that Helene retained the right to all the income from the trust during her life. The "residuary" beneficiaries of the trust, eligible to receive distributions of trust property upon Helene's death, were Donald's three children and one granddaughter.

At no time did the trust allow Helene to appoint persons as beneficiaries of the trust. Except for her right to receive all the income from the trust during her life, as well as limited principal amounts as discussed above, she had no right to cause the trust to distribute trust property (principal or interest) to anyone.

Helene died on May 4, 2015, having remained an Oregon resident. Her original Oregon estate tax return, filed February 4, 2016, took a position essentially consistent with the Department of Revenue's position in this case. The estate paid substantial tax to Oregon, and an amended return filed May 2, 2016, requested a full refund, based on Plaintiff's constitutional position that any property transferred from the trust at Helene's death was not subject to Oregon tax. Following an administrative conference, Defendant refunded a small portion of the amount

---

[1] Unless otherwise indicated, references to forms are to the forms published by the Internal Revenue Service (IRS).

requested and declined to refund the remainder, leading to this appeal. The case is before the court on cross-motions for summary judgment.

## II.   ISSUE

Does the Due Process Clause of the United States Constitution prohibit Oregon from including in the measure of its estate tax the value of the trust property remaining at Helene's death?

## III.   ANALYSIS

### A.   *Statutory Background*

Oregon imposes an estate tax on the transfer of property of an Oregon-resident decedent.[2] ORS 118.010 (2)(a).[3] The decedent's "Oregon taxable estate" is the decedent's taxable estate determined for purposes of the federal estate tax, subject to Oregon "adjustments." ORS 118.010(3); IRC § 2001(a) (imposing federal estate tax). The federal taxable estate includes the value at the decedent's death of all property in which the decedent had an interest, less certain deductions and tax credits allowed by the Code. *See* IRC § 2051 (defining federal taxable estate). One of these deductions, commonly referred to as the "marital deduction," permits the estate to deduct the value of certain property that passes (or has passed during life) from the decedent to the decedent's surviving spouse. IRC §§ 2056(a), (b); Treas Reg § 20.2056(a)-1(a). The surviving spouse's federal taxable

---

[2] Oregon's tax has undergone multiple amendments. Oregon previously referred to its tax as an "inheritance tax"; however, in amendments generally applicable for decedents dying on or after January 1, 2012, the 2011 legislature (among other things) relabeled the tax as an "estate tax" in the midst of other changes. *See* Or Laws 2011, ch 526, § 30; *see* Exs B and E, HB 2541, House Committee on Revenue, Feb 10, 2011 (Oregon Law Commission Inheritance Tax Work Group Report memorandum accompanying statements of Lynne Shetterly and Wendy Johnson; explaining that "[t]his bill changes the terminology throughout ORS Chapter 118 and calls the tax what it is—an estate tax and NOT an inheritance tax. The tax is correctly referred to as an estate tax because it is the estate that is taxed, and not individual inheritance beneficiaries." (Uppercase in original.)). For an overview of inheritance and estate taxes, see Hellerstein & Hellerstein, *State Taxation* ¶ 21.02 (3d ed 2020).

[3] Unless otherwise noted, all references to the Oregon Revised Statutes (ORS) are to the 2013 edition. Pursuant to ORS 118.007, all references to the Internal Revenue Code ("IRC" or the "Code") are to the Code as amended and in effect on December 31, 2010.

estate then includes the value of that property, determined as of the surviving spouse's death. IRC § 2044(a).

The marital deduction is subject to strict limitations designed to ensure that "terminable interest" property passing from a decedent does not escape taxation upon the death of the surviving spouse. *See* IRC § 2056(b)(1) (terminable interest property limitation); *Estate of Letts v. Comm'r*, 109 TC 290, 295 (US Tax Ct 1997), *aff'd without pub op*, 212 F 3d 600 (11th Cir 2000) (describing federal marital deduction).[4] As noted, an exception in the Code allows the estate to deduct the value of "qualified terminable interest property."[5] IRC § 2056(b)(7). QTIP must pass from the decedent to the surviving spouse; the surviving spouse must be entitled to "all of the income from the property" for life; no person

---

[4] As summarized in a leading treatise, the federal "terminable interest" rules

"usually deny the marital deduction if (1) interests in the property pass from the decedent to both the surviving spouse and another person, (2) the surviving spouse's interest may terminate on the lapse of time, the occurrence of a contingency, or the failure of an event to occur, and (3) the property may be possessed or enjoyed by the other person on the termination of the spouse's interest. For example, if a decedent bequeaths Blackacre to her surviving spouse for life, remainder to the couple's children, the spouse's life estate is not deductible because it will terminate on the spouse's death and the children will then obtain possession and enjoyment of the property pursuant to an interest (the remainder) that passed to them from the decedent. The result would be the same if the decedent bequeathed property in trust, directing that the income be distributed to her surviving spouse for life and that the corpus be distributed to the children on the spouse's death.

"Two important modifications of the terminable interest rule are found in [IRC] §§ 2056(b)(5) and (7). The former allows the marital deduction for property in which the surviving spouse has the right for life to all income and a general power of appointment. Under the latter provision, property in which the surviving spouse has a right to income for life qualifies for the deduction, regardless who holds the remainder interest, if the decedent's executor elects to treat the property as qualified terminable interest property (QTIP). The principal consequence of the QTIP election is that the property remaining at the surviving spouse's death must be included in the spouse's gross estate. Sections 2056(b)(5) and (7) essentially allow the marital deduction on the condition that the property be subject to gift or estate tax when it passes from the spouse to someone else."

Boris Bittker & Lawrence Lokken, *Federal Taxation of Income, Estates and Gifts* ¶ 129.3 (3d ed 2019) (footnotes omitted).

[5] IRC section 2056(b)(5) provides an additional exception to the "terminable interest" rule by allowing the marital deduction for property in which the surviving spouse has the right for life to all income and a general power of appointment. That section is not at issue here.

may have a power, exercisable before the death of the surviving spouse, to appoint any part of the property to any person other than the surviving spouse; and the executor of the decedent's estate must make an election to designate the terminable interest property as QTIP on the decedent's federal estate tax return on Form 706. IRC § 2056(b)(7)(B). Once made, the QTIP election is irrevocable. IRC § 2044.[6] In a requirement informally referred to as the *quid pro quo*, the surviving spouse's federal gross estate at death then includes any of the QTIP that the surviving spouse has not consumed; and federal gift tax applies if the surviving spouse makes gifts of the QTIP during his or her life. *See* IRC §§ 2501(a), 2519. Because Oregon incorporates as its starting point the "taxable estate" as defined for federal estate tax purposes, when an estate elects to treat property as QTIP for federal estate tax purposes, the election also applies for purposes of Oregon's tax, reducing the value of property in the estate of the first spouse to die and requiring the surviving spouse's estate to include the value of remaining trust property.[7]

B.  *Discussion*

Plaintiff argues that the Due Process Clause of the United States Constitution prohibits Oregon from including

---

[6] As discussed in more detail below, the IRS has adopted guidance declaring that it will "disregard the election and treat it as null and void" if it was "unnecessary" when made because no federal estate tax would have been imposed on the estate of the first-to-die spouse even in the absence of the election. Rev Proc 2001-38, 20011 CB 1335.

[7] As a permissible Oregon "adjustment," ORS 118.010(8) and ORS 118.010 (3)(a)(B)(ii) allow separate Oregon elections for QTIP purposes, and an administrative rule allows an estate to elect to treat a smaller (or larger) portion of trust property as QTIP for Oregon estate tax purposes than for federal estate tax purposes. *See* OAR 150-118-0080; *see generally* Steven D. Nofziger, *EGTRAA and the Past, Present, and Future of Oregon's Inheritance Tax System*, 84 Or L Rev 317, 344-46 (2005). The rule existed in 2012 as *former* OAR 150-118.010(7). In 2013 Defendant modified that rule to apply only to estates of decedents dying before January 1, 2012, and added *former* OAR 150-118.010(8) to apply to estates of decedents dying on or after January 1, 2012. *Former* OAR 150-118.010(8) later was recodified as OAR 150-118-0080 without substantive change. Donald's estate apparently made no such "Oregon-only" election. Neither party has fully addressed whether Donald's estate could have elected a zero or *de minimis* Oregon QTIP amount solely for Oregon purposes and in spite of the federal QTIP election. The court raised this question at oral argument; the parties stated that they did not consider the Oregon-only election provisions applicable to the facts in the present case. The court expresses no view on the subject.

in Helene's Oregon taxable estate the property in Donald's trust merely because Helene, an Oregon resident, enjoyed the right to all the income from the property during her life, along with limited rights to receive distributions of trust principal. Among other arguments, Plaintiff asserts that allowing the tax would be unfair because Helene had only limited rights to enjoy the trust property during her life and lacked any power to appoint the trust property to another person, and because neither Donald, the residuary beneficiaries, the trustee, nor any of the trust property, had any connection to Oregon. Both parties refer to this court's opinions in *Prestidge v. Dept. of Rev.*, 21 OTR 386 (2014), and *Arnold v. Dept. of Rev.*, 7 OTR 485 (1978). However, the court begins by reviewing the United States Supreme Court opinions on the application of the Due Process Clause to state tax cases, and specifically to estate tax cases.[8] The court then will consider the parties' arguments.

As the Court recently summarized:

"The Due Process Clause provides that '[n]o State shall *** deprive any person of life, liberty, or property, without due process of law.' [US Const, Amend XIV], § 1. The Clause 'centrally concerns the fundamental fairness of governmental activity.'

"In the context of state taxation, the Due Process Clause limits States to imposing only taxes that 'bea[r] fiscal relation to protection, opportunities and benefits given by the state.' The power to tax is, of course, 'essential to the very existence of government,' but the legitimacy of that power requires drawing a line between taxation and mere unjustified 'confiscation.' That boundary turns on '[t]he simple but controlling question *** whether the state has given anything for which it can ask return.'"

*N. Carolina Dept. of Rev. v. The Kimberley Rice Kaestner 1992 Family Trust*, ___ US ___, 139 S Ct 2213, 2219-2220, 19 Cal Daily Op Serv 5832 (2019) (case citations omitted). The Court restated a longstanding two-step analysis to decide whether a state tax abides by the Due Process Clause, which this court now applies.

---

[8] As will be seen, the court's discussion of Supreme Court cases makes it unnecessary to discuss *Prestidge* or *Arnold* in depth; however, those opinions remain good law.

The court must first test for "minimum contacts," *i.e.*, "some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax *** such that the tax does not offend traditional notions of fair play and substantial justice." *Id.* at 2220 (quoting *Quill Corp. v. North Dakota*, 504 US 298, 306, 112 S Ct 1904, 119 L Ed 2d 91 (1992), *overruled on other grounds*, *South Dakota v. Wayfair, Inc.*, ___ US ___, 138 S Ct 2080, 2092-93, 201 L Ed 2d 403 (2018)). If those minimum contacts are present, the court must then determine whether "the income [or other taxable item] attributed to the State for tax purposes [is] rationally related to 'values connected with the taxing State.'" *Kaestner*, ___ US at ___, 139 S Ct at 2220 (citation omitted) ("[u]ltimately, only those who derive 'benefits and protection' from associating with a State should have obligations to the State in question").

### 1. *Minimum connection*

The court starts by examining how the United States Supreme Court has applied the "minimum connection" requirement in the context of state estate or similar taxes on the transfer of intangible property. The Court has long recognized that the domicile of a person whose death brings about a transfer affords an adequate constitutional basis for the state to impose the tax. In *Curry v. McCanless*, 307 US 357, 59 S Ct 900, 83 L Ed 1339 (1939), the Court broke from its own recent cases that had sought to identify a single "situs," and thus a single taxing state, for intangible property.[9] In *Curry*, Grace Scales, domiciled in Tennessee, received outright ownership of bonds and shares of stock in various Alabama corporations after the death of her brother, an Alabama resident. 307 US at 376 (facts recited in dissenting opinion). Scales immediately transferred the property in trust to the same corporate trust company in Alabama that previously had held the property in trust for her brother and his widow. The portion of the property at issue in the case was a set of shares and bonds over which Scales retained

---

[9] *See generally* Hellerstein, *State Taxation* at ¶ 21.14[1] (recounting Court's early position that Due Process Clause does not prevent taxation of intangibles by more than one state; Court's adoption of a "situs" rule in 1930s; and Court's reversion to original position starting in 1939).

a lifetime interest in the income and a "general power of appointment" (in that case, the right to direct the sale of trust property and the right to dispose of the corpus by her will). *See id.* at 360, 376. When Scales died, her estate appointed an executor for Tennessee and a separate executor for Alabama, and those executors sued in Tennessee for a declaratory judgment to determine which portions of the estate each state could tax. Each state's taxing authority defended the suit, each claiming the right to tax the full value of the trust property. *Id.* at 379. The Tennessee Supreme Court held that only Tennessee could tax the property, on the grounds that the property had never acquired a "situs" in Alabama. *Id.* at 378.

The United States Supreme Court devoted much of its opinion to rejecting the situs rule as a mere rule of convenience whose artificiality becomes apparent when applied to intangible property. The Court explained that a state's authority to tax the rights that a person holds in property depends ultimately on whether the state as sovereign has the theoretical and practical power to determine and protect those rights. In the case of tangible property, the Court found that the state where the property is physically located has a clear practical ability to define and protect rights, even to the exclusion of other states, giving rise to the shorthand construct that only the state of the property's "situs" may impose its tax. *Id.* at 364-65. Because *Curry* involved intangible property, however, the Court returned to the fundamental principles underlying a state's authority to tax, rather than straining to apply the shorthand "situs" rule. The Court stated that a state's "control over the person" of a domiciliary is an adequate constitutional basis to require the domiciliary to pay a tax "on the use and enjoyment of rights in intangibles measured by their value." *Id.* at 366. The Court then found that Tennessee, as Scales's state of domicile, controlled her and protected her "power to dispose of the intangibles" as a potential source of wealth to her; as a citizen of Tennessee she had the "highest obligation" to contribute to the support of its government from that source of wealth. *Id.* at 370-71. On the other hand, Alabama, as the state where the trustee had its corporate domicile and exercised its rights as legal owner of the property, also had

the power to tax the trust property "or the transfer of it or an interest in" the trust property, even though the transfer "was effected by decedent's testamentary act in another state." *Id.* at 370. The Court thus allowed Tennessee to tax the value of the trust property and reversed the Tennessee Supreme Court's holding to the extent it "denies the power of Alabama to tax ***." *Id.* at 374. By declining to apply a situs rule, *Curry* and later cases expressly upheld what sometimes is referred to as "double taxation," the authority under the Due Process Clause of more than one state having a sufficient connection with intangible property to tax its transfer.[10]

Although *Curry* predates the United States Supreme Court's two-step formulation of the due process analysis, this court reads *Curry* as establishing that the requisite minimum connection to impose an estate or inheritance tax always exists between the state of a person's domicile and rights that the person holds in intangible property. This reading is consistent with *Kaestner*, which dealt exclusively with the "minimum contacts" test.[11] In *Kaestner*, the Court rejected North Carolina's claim to tax the income of a trust based solely on the fact that a beneficiary was domiciled there who had *no* present right in property held in trust because her ability to enjoy either income or corpus of the trust was at the complete discretion of a trustee who had never distributed to her any amounts from the trust. ___ US at ___, 139 S Ct at 2221. Helene, like the decedent in *Curry* and in contrast to the beneficiary in *Kaestner*, had an exclusive lifetime interest in the trust created pursuant to Donald's will and received substantial payments from the trust. The court tentatively concludes that the connection

---

[10] As a leading state taxation commentator has observed, states generally have refrained from exercising the constitutional power of double taxation: "[T]he states recognize that only the state of the decedent's domicile may impose a tax on the decedent's intangibles that have not acquired a business situs elsewhere ***." Hellerstein, *State Taxation* at ¶ 21.09; *see also* Kathleen Leslie Roin, *Due Process Limits on State Estate Taxation: an Analogy to the State Corporate Income Tax*, 94 Yale L J 1229, 1233-37 (1985) (arguing that *Curry* and other state estate tax cases focusing on domicile incorrectly allow multiple taxation; urging courts to borrow tools from income tax cases such as apportionment among states connected to the property).

[11] The Court expressly noted that it did not reach the "rational relation" test. *Kaestner*, ___ US at ___ n 5, 139 S Ct at 2220 n 5.

between Oregon as Helene's state of domicile and the property held in the trust created by Donald's will satisfied the minimum required to allow Oregon to impose a transfer tax of *some* measure at Helene's death.

2.  *Rational relationship between the tax base and benefits the state provides*

The court now turns to the second due process requirement, that of a rational relationship between the tax base and the values and benefits that the taxing state provides. Here, too, the court starts with *Curry*, which firmly established that a domiciliary's interest in intangible property need not rise to the level of outright ownership to support a tax on the value of the entire property. The Tennessee domiciliary Scales held a lifetime interest in the income from the trust property, as well as a general power of appointment that the Court declared an interest "equivalent to ownership." *Curry*, 307 US at 371-72. The trustee, with its "place of *** domicile" in Alabama, was a corporation that held legal title to the trust property. *Id.* at 372. The Court held that each state could, without offending due process, impose a tax measured by the full value of the aggregate of all interests in the property, even though each state's connection to the property was limited to fewer than all the "sticks" in the "bundle" of interests in the property.

In later cases, the Court similarly approved imposition of an estate tax measured by the value of the entire "bundle," even though occasioned by the exercise or extinguishment of rights that fell short of "ownership" or its equivalent. One year after *Curry*, the Court reached the same result where the domiciliary decedent's interests in a trust consisted of a "special" or "limited" power of appointment along with a life interest in the trust income, both interests having been created by the will of the decedent's late husband, Cornelius Vanderbilt. *Whitney v. State Tax Commission of New York*, 309 US 530, 60 S Ct 635, 84 L Ed 909 (1940). Decedent Alice Vanderbilt's power of appointment was limited to determining, by her will, how the trust corpus should be disposed of among four named children. *Whitney*, 309 US at 534-35. In contrast to the facts in *Curry*, the decedent could not invade the corpus during her life or name her own estate or anyone

other than the four children to receive any portion of it upon her death. The taxing authority of her state of domicile, New York, determined that the entire value of the corpus was included in the measure of the estate tax. Alice Vanderbilt's estate also included additional property with a value nearly equal to that of the trust corpus, and beneficiaries whom her will had designated to receive that additional property sued because inclusion of the trust corpus so enlarged the estate that a higher graduated rate of tax applied, diminishing the amount that they received.

The Court acknowledged that the limitations on the decedent's interest in the trust property meant that she had no "beneficial interest" in the property and was not its "beneficial owner." *Whitney*, 309 US at 537-38. But the Court upheld tax on the full value of the trust property, stating that the occasion for the tax was neither the transfer "of" a beneficial interest held by a decedent, nor the acquisition "of" such a beneficial interest by new individuals; rather, the tax was imposed when one person

> "acquires economic interests in property *through* the death of another person, even though such acquisition is in part the *automatic consequence of death* or related to the decedent merely because of his power to designate to whom and in what proportions among a restricted class the benefits shall fall. \*\*\* A person may by his death bring into being greater interests in property than he himself has ever enjoyed, and the state may turn advantages thus realized into a source of revenue \*\*\*."

*Id.* at 538-39 (emphases added). The Court distinguished the New York estate tax at issue from a "legacy tax,"[12] which is measured by the specific interests which the beneficiaries of the power received, stating that "if death may be made the occasion for taxing property in which the decedent had no 'beneficial interest,' then *the measurement of that tax by the decedent's total wealth-disposing power is merely an exercise of legislative discretion* in determining what the state shall take in return for allowing the transfer." *Id.* at 540 (emphasis added). The Court thus emphasized a state's discretion to determine the measure of the tax.

---

[12] The tax at issue, like the present-day federal and Oregon taxes, "measured the levy by the size of the total estate." *Whitney*, 309 US at 536.

Similarly, six years after *Curry*, the Court determined that due process does not prevent the federal government from using the sum of *both* community property interests in marital property as the measure of the gross estate of the *first* spouse to die. *Fernandez v. Wiener*, 326 US 340, 66 S Ct 178, 90 L Ed 116 (1945). The Court rejected the surviving spouse's argument that the federal estate tax improperly taxed her on the value of an interest that she already held, and that the measure of the tax should be limited to the value of the decedent husband's community interest, which was transferred to her by operation of law. The Court relied on earlier decisions involving federal, as well as state, estate taxes that made clear that the Due Process Clause affords government wide latitude to define the measure of a transfer tax beyond the value of any specific interest passing from the decedent. Quoting from *Whitney*, the Court described its case law as emphasizing "'the practical effect of death in bringing about a shift in economic interest, and the power of the legislature to fasten on that shift as the occasion for a tax.'" *Fernandez*, 326 US at 354 (quoting *Whitney*, 309 US at 539). Likewise, in an earlier community property case involving California's tax, the Court considered "'whether the surviving wife's share of the community property is subject to this inheritance tax.'" *Moffitt v. Kelly*, 218 US 400, 401, 31 S Ct 79, 54 L Ed 1086 (1910) (quoting *Estate of Moffitt*, 153 Cal 359, 360, 95 P 653 (1908)). The Court found no constitutional bar, stating:

> "[T]he Constitution of the United States does not, generally speaking, control the power of the states to select and classify subjects of taxation, and hence, even although the wife's right in the community property was a vested right *** it was nevertheless within the power of the state, without violating the Constitution of the United States, in selecting objects of taxation, to select the vesting in complete possession and enjoyment by wives of their shares in community property, consequent upon the death of their husbands, and the resulting cessation of their power to control the same and enjoy the fruits thereof."

*Moffitt*, 218 US at 403-04. Similarly, in another case involving the federal estate tax, the Court upheld measuring the gross estate of a first-to-die spouse by the *entire* value of property owned by the couple as tenants by the entireties:

"The question here, then, is, not whether there has been, in the strict sense of that word, a 'transfer' of the property by the death of the decedent, or a receipt of it by right of succession, but *whether the death has brought into being or ripened for the survivor, property rights* of such character as to make appropriate the imposition of a tax upon that result (which Congress may call a transfer tax, a death duty or anything else it sees fit), to be measured, in whole or in part, by the value of such rights."

*Tyler v. United States*, 281 US 497, 503, 50 S Ct 356, 74 L Ed 991 (1930) (emphasis added).

All of these decisions confirm that an estate or other transfer tax need not be measured by the value of property transferred "from" the decedent "to" the beneficiaries. The court finds *Whitney* squarely on point, as the power of appointment that the decedent held in that case was so limited as to preclude her from any personal interest in the trust corpus beyond her lifetime interest in the trust income. As the New York Court of Appeals bluntly summarized:

"The property which was included in Mrs. Vanderbilt's estate did not at any time belong to her. It did not at her death pass from her to those whom she appointed to take. Her power of appointment was not general. By its exercise she could obtain no benefit for herself, her creditors or her estate. * * * Mrs. Vanderbilt might, by exercise of her power of appointment, determine the shares which members of a limited group defined by the will of Cornelius Vanderbilt should receive out of property in the estate of Cornelius Vanderbilt and held by trustees under his will. When she exercised that power she gave her appointees nothing which belonged to her and she relinquished no rights which she might have asserted for herself."

*Estate of Vanderbilt*, 281 NY 297, 303-04, 22 NE2d 379 (1939), *judgment aff'd sub nom Whitney v. State Tax Comm'n*, 309 US at 542.

The only arguably relevant factual difference is that Helene lacked even the limited power of appointment over the trust property that Alice Vanderbilt possessed. Having found no controlling cases with facts precisely analogous to those in Helene's case, the court applies the general principles stated above to determine whether this difference

requires a different result. In both cases, until the death of the widow, the children whom the husband had decided were next in line as beneficiaries had no present right to enjoy any portion of the trust property. But at the widow's death, the value of all rights in the entire property became available for distribution. The court concludes that Helene's death, like the death of Alice Vanderbilt, "occasioned," "ripened," or "brought into being," for those children, a complete set of rights in the entire trust property worth much more in the aggregate than the rights she enjoyed during her life.

The fact that Alice Vanderbilt enjoyed the additional right to determine the relative extent of those rights *as among* the four children is not relevant to whether the amount of tax is rationally related to values connected with her state of domicile. The value added to Alice Vanderbilt's estate upon the termination of her lifetime income interest was the *total* value of the trust property, which her late husband already had determined would pass to the children, regardless of how she chose to split it among them. Accordingly, the court finds *Whitney* on all fours with this case even though Helene lacked any power of appointment over the trust corpus. By the logic of *Whitney*, the court tentatively concludes that Oregon as Helene's state of domicile could rationally measure its tax by the value of the entire property in Donald's trust.

## C.   *Parties' Arguments*

To test the court's tentative conclusions, the court now turns to the parties' arguments. The court understands Plaintiff to object primarily under the Supreme Court's "minimum connection" test. However, to give Plaintiff's arguments full consideration, the court also considers Plaintiff's objections within the context of the "rational relation" part of the analysis where appropriate. Defendant argues that the reasoning of *Curry*, *Whitney*, *Fernandez*, and later cases allows Oregon to impose its tax upon Helene's death and to include the entire trust property in Helene's estate.

Plaintiff primarily seeks to distinguish *Curry* and other cases on the grounds that the decedents there held

substantial rights in the trust assets in addition to their lifetime interest in the trust income. The court agrees that Helene clearly lacked those rights or other rights equivalent to ownership. Plaintiff does not, however, adequately explain why this difference would prevent Oregon from having the minimum connection to impose its transfer tax upon the extinguishment of Helene's lifetime exclusive interests and the acquisition of new, greater rights by the contingent beneficiaries. Plaintiff points out that beneficiaries in other states bear the burden of any tax that Oregon is permitted to impose. ("It is neither 'fair' nor 'reasonable' for the residuary beneficiaries in this case to bear the burden of the Oregon Estate Transfer Tax on the intangibles held in Donald's trust at the date of Helene's death, especially since there was no actual transfer of assets into Helene's Estate.") However, *Curry* and later cases leave them little constitutional basis to complain, given Oregon's "control over the person" of Helene as a domiciliary and her "use and enjoyment of rights in intangibles."

Plaintiff also contends that Oregon's imposition of a tax is contrary to Donald's wish to minimize estate taxes, and contrary to his expectations at his death. The parties agree that Donald died a Montana resident with no connection to Oregon other than a spouse who had just moved there, and it is unquestioned that none of his property would have been taxed in Oregon if his original will had not been modified and a QTIP election had not been made. But by making the federal QTIP election, the personal representative of Donald's estate made the choice to exclude the trust property from Donald's estate in order to minimize *federal* tax, knowing that Helene was alive and was then domiciled in a *state* that incorporates the QTIP trust rules.[13] To the extent that Donald's wishes or expectations are relevant, the court assumes that the personal representative acted in accordance with them. Neither party asserts otherwise. Finally, Plaintiff notes that Oregon lacked any connection to

---

[13] As noted above, the parties have not discussed whether Donald's estate also could have made an Oregon-only election to reduce the amount of trust property that would have been included in Helene's Oregon estate. *See* OAR 150-118-0080. The court expresses no view as to whether such an election would have been permissible.

the trustee or to the location of companies involved with the holding or management of the intangible property. Again, *Curry* answers the argument by expressly allowing the state of a domiciliary trust beneficiary to impose a transfer tax measured by the value of intangible property even if legal ownership and management of the property are in another state.

Plaintiff offers a "floodgates" argument:

"The defendant argues the cessation of a decedent's beneficiary interest alone is a sufficient 'transfer' to warrant taxation by the beneficiary's domiciliary state, but that opens the door to subjecting all trust corpuses to taxability in the estate of a deceased life estate beneficiary or the estate of a deceased remainder beneficiary even if those beneficiaries, as here, have no power or control over the trust assets."

Plaintiff's argument implies that a holding by this court in favor of Defendant would make new law. However, the scenario Plaintiff warns of appears to have been one of the subjects of *Binney v. Long*, 299 US 280, 286-88, 57 S Ct 206, 81 L Ed 239 (1936). There, the Court decided that due process did not bar Massachusetts from including in a domiciliary's estate the value of trust property in which the domiciliary "reserve[ed] a life estate in the income but no power to revoke, alter or amend." *Id.* at 282;[14] s*ee also Guaranty Trust Co. v. Blodgett*, 287 US 509, 53 S Ct 244, 77 L Ed 463 (1933) (similar as to Connecticut statute); *Bunting v. Sullivan*, 152 Conn 331, 336, 206 A2d 471 (1965) (state of domiciliary with a lifetime interest in trust property and a power only to *add* to trust corpus could impose tax upon domiciliary's death; "What is sought to be taxed is not the property itself, but rather and only the *** succession to *** the title and beneficial enjoyment of the property which took place by reason of [the] death ***.") (citations and internal quotation marks omitted). In any event, this court does not reach a sweeping conclusion as Plaintiff contends. Plaintiff asserts that Oregon law would not include the trust property in Helene's

---

[14] The remainder beneficiaries' due process argument was an objection to the "retroactive" feature of the tax, which the state adopted after the decedent had created the trust but before her death. The Court reasoned that the beneficiaries held mere contingent remainder interests that did not vest until after the taxing statute had been passed. *Id.* at 287.

estate were it not for the QTIP election, and Defendant does not disagree. Accordingly, this court's decision concerns only the limited situation of a QTIP trust, a mechanism that Congress devised, and Oregon has adopted, to allow spouses in a marriage to shift value from one to the other in order to defer the imposition of tax until both spouses are deceased.

Plaintiff argues that the *quid pro quo* rationale that supports including the value of QTIP in a surviving spouse's *federal* estate is absent with respect to Helene's *Oregon* estate. For that reason, Plaintiff asks the court either to conclude that Oregon's tax base cannot include the trust property or to require Defendant to ignore the QTIP election solely for Oregon tax purposes. The *quid pro quo* in the QTIP context is commonly understood to refer to the inclusion of the value of trust property in the surviving spouse's estate in exchange for the earlier deduction of the value of that property from the estate of the original decedent. *See* Bittker, *Federal Taxation of Income, Estates, and Gifts* at ¶ 129.4. Plaintiff's premise is that the Due Process Clause would have barred Oregon from imposing its tax on Donald's estate in the first place; therefore, the QTIP election could not reduce his estate's Oregon tax liability. However, Plaintiff has not shown why the Due Process Clause would prohibit Oregon from including the trust property in the measure of its tax on Helene's estate *regardless* of a *quid pro quo* or the lack of one. Plaintiff at times notes that the QTIP election merely "deems" property to have been transferred from the first-to-die spouse to the surviving spouse. According to Plaintiff, this means that the trust property is never transferred "from" the surviving spouse to the residuary beneficiaries; therefore, due process forbids a state from taxing the extinguishment of the surviving spouse's lifetime interest. This argument ignores the theoretical basis of *Curry*, *Whitney*, and other cases discussed above: The state of the surviving spouse's domicile may tax the release of rights to residuary beneficiaries occasioned by the death of the surviving spouse. Helene held a very real exclusive lifetime interest in the trust property. For the same reasons previously discussed, Oregon is not constitutionally compelled to ignore the QTIP election.

Plaintiff also asserts a nonconstitutional basis for undoing the election, arguing that Oregon incorporates, or should follow,[15] the IRS's Revenue Procedure 2001-38, 2001-1 CB 1335. As explained above, that procedure disregards an unneeded QTIP election for federal estate tax purposes, as for example when the first spouse dies leaving an estate that is so small as to be nontaxable even if the property in the trust is included. Plaintiff's interpretation of Oregon's estate tax statutes is incorrect. Although Oregon has adopted the definitions of terms used in the portions of the Internal Revenue Code relating to federal estate taxes, Oregon has not thereby adopted federal Treasury regulations or IRS promulgations governing elections or other procedures for purposes of the Oregon estate tax. *See* ORS 118.007 (adopting federal definitions of terms).

The Oregon *income* tax statutes contain an express requirement to regard federal "rules or regulations" as rules adopted by the Department of Revenue. ORS 316.032(3) (personal income tax), ORS 314.011(4) (income taxation generally), ORS 317.013(3) (corporation excise tax). But those requirements apply expressly for purposes of those chapters, and nothing in ORS chapter 118, or elsewhere, imposes a comparable requirement for estate tax purposes. Although federal regulations and other administrative pronouncements may, on their own merits, have persuasive value in interpreting federal statutes that Oregon incorporates, Revenue Procedure 2001-38 is a procedural pronouncement, not an interpretation of a federally defined term such as "taxable estate." The revenue procedure ultimately draws its authority from powers that Congress delegated to the Secretary of the Treasury in a specific statute. IRC section 7805 authorizes the Secretary to "prescribe all needful rules and regulations for the enforcement of [the Code]," including authority to prescribe the time and manner of making elections, except as otherwise set forth in the Code. IRC §§ 7805(a), (d); *see also* Treas Reg § 301.91001 (election extensions generally).

---

[15] Plaintiff does not argue that Oregon has adopted its own rule or procedure comparable to Revenue Procedure 2001-38; nor has the court found any such rule.

The Oregon legislature has made its own general delegation of rulemaking authority to Defendant. *See* ORS 305.100(1) ("The Department of Revenue shall \*\*\* [m]ake such rules and regulations it deems proper to regulate its own procedure and to effectually carry out the purposes for which it is constituted."). Although the Oregon estate tax statutes authorize or require rulemaking in various provisions, nothing in Oregon's statutory delegation requires Defendant to conform its procedures with respect to QTIP elections to federal regulations or pronouncements.

## IV.  CONCLUSION

The court concludes that inclusion of the trust property in Helene's estate does not violate the federal Due Process Clause because Helene had an exclusive lifetime interest in the trust property and was an Oregon domiciliary at the time of her death. Nothing in Oregon law requires Defendant to apply Revenue Procedure 2001-38 to ignore Donald's federal QTIP election. Now, therefore,

IT IS ORDERED that Plaintiff's cross-motion for summary judgment is denied; and

IT IS FURTHER ORDERED that Defendant's motion for summary judgment is granted.